[L. A. No. 6177. In Bank.—October 19, 1921.]

LAURA STARR, Respondent, v. LOS ANGELES RAILWAY CORPORATION (a Corporation), Appellant.

[1] NEGLIGENCE—PERSONAL INJURIES—PLEADING—INCONSISTENT DEFENSES.—A defendant has a right to make inconsistent defenses, and he does so in an action for damages for personal injuries where in the first count of his answer he specifically denies the charge of negligence set forth in the complaint and in his second count alleges contributory negligence of the plaintiff.

[2] ID.—INSTRUCTIONS — POSITION OF CONDUCTOR ON CAR — QUESTION OF FACT.—In an action for damages for personal injuries sus-

---

2. Presumption of negligence from sudden start, stop, jerk, or jolt of car, notes, 13 L. R. A. (N. S.) 611; 29 L. R. A. (N. S.) 814; L. R. A. 1916C, 373.

Negligence on starting street-car with jerk while passenger is alighting, notes, 23 L. R. A. (N. S.) 891; 34 L. R. A. (N. S.) 225.

tained in falling from a "pay-as-you-enter" street-car, where the complaint counts upon the negligence of the company in suddenly starting the car with a jerk while the plaintiff was alighting, and there is no general allegation of negligence, an instruction that if the conductor knew that the plaintiff was about to alight and that the alighting place was dangerous because the car was traveling at a fast rate of speed and would necessarily give a lurch upon reaching a certain street and he was not in his place on the car, the acts of the conductor, consisting in his failure to be at his post, would constitute negligence, and in such a case the verdict should be for plaintiff, is erroneous, as the duty of the conductor with reference to his place on the car is a question of fact, and there was no issue on this subject.

[3] ID.—CONTRIBUTORY NEGLIGENCE.—Such instruction is prejudicially erroneous, in that it fails to take into account the alleged contributory negligence of the plaintiff, this defense having been made.

[4] ID.—INSTRUCTION—PROXIMATE CAUSE OF INJURY.—Such instruction is erroneous in overlooking the principle that the negligence must be a proximate cause of the injury in order to justify recovery.

[5] ID.—EMPLOYEES OF CARRIERS—PLACE OF PERFORMANCE OF DUTIES. The law fixes no particular place for the performance of the duties of the employees of a carrier; it merely fixes the obligation of the carrier to the passenger.

[6] ID.—LURCHING OF CAR.—Such instruction is erroneous in permitting the jury to find for the plaintiff, not only upon conduct of the conductor which could not be a proximate cause of the injury, but also if she was injured by a jerk or lurch of the car, necessarily incident to its operation over the intersection of a street at fast speed, and if the conductor was not in his place.

[7] ID.—PROXIMATE CAUSE OF INJURY—MATTERS OF LAW.—When the court specifically instructs the jury that in a certain state of facts they must bring in a verdict for the plaintiff, the jury has a right to assume that the court in that instance is determining as a matter of law that such negligence was the proximate cause of the injury and that there was no contributory negligence.

[8] ID.—INSTRUCTION TO FIND FOR PLAINTIFF—ESSENTIALS OF.—The rule is that where an instruction directs a verdict for plaintiff if the jury finds certain facts to be true, it must embrace all the things necessary to show the legal liability of the defendant and to warrant the direction or conclusion that the plaintiff is entitled to the verdict.

[9] ID.—JUSTIFIABLE RATE OF SPEED — AMBIGUOUS INSTRUCTION.—In such a case an instruction that the defendant may be justified under certain circumstances in running its car at "a very fast"

or "the fastest rate" of speed, while under other circumstances to run its cars at "a high" rate of speed might be negligence, and that if the jury found that the defendant operated its car at such a rate of speed while approaching the streets where the accident happened, and that said speed contributed to or was the proximate cause of the accident, the verdict should be for the plaintiff, is ambiguous, because it does not appear what rate of speed was considered by the court in the last sentence of the instruction.

[10] ID.—ERRONEOUS INSTRUCTION.—Such instruction is erroneous in that it allows the jury to bring in a verdict for plaintiff if the rate of speed "might be negligent." In order that the plaintiff should recover because of the speed alone, it is essential that the speed should have been negligent under the circumstances.

[11] ID.—PROXIMATE CAUSE—SPEED CONTRIBUTING TO.—Such instruction is erroneous in the fact that the jury was instructed that if the speed contributed to or was the proximate cause of the accident, their verdict should be for the plaintiff.

[12] ID.—CONSTRUCTION OF INSTRUCTION — CONTRADICTORY INSTRUCTIONS.—Instructions are to be construed together, but where the instructions are flatly contradictory, as is the case where the jury is instructed upon a specific state of facts to bring in a verdict in favor of the plaintiff or defendant, and is elsewhere instructed in general terms not to do so, the instructions must be held to be conflicting and prejudicial, because it cannot be ascertained upon what theory the verdict was returned.

[13] ID.—EVIDENCE—CONDUCT AND HABIT OF CONDUCTOR.—In such a case, evidence as to the previous conduct and habit of the conductor as to sitting down and talking to the passengers was improperly received, not only because the matter was not in issue, but also because his habit was not competent.

APPEAL from a judgment of the Superior Court of Los Angeles County. Howard A. Peairs, Judge Presiding. Reversed.

The facts are stated in the opinion of the court.

Gibson, Dunn & Crutcher and Norman S. Sterry for Appellant.

E. E. Rogers for Respondent.

WILBUR, J.—The plaintiff recovered judgment for personal injuries received by her by reason of being thrown

from a car of the defendant Railway Company while she was a passenger thereon. The complaint alleges that the car was so negligently operated that it started with a sudden jerk while the plaintiff was standing on the platform of the car, thereby throwing her with great force and violence to the pavement. The defendant denied this act of negligence and by way of affirmative and separate defense alleged that the plaintiff contributed to her own injuries by negligently attempting to alight from the car while it was still in motion. It appeared from the evidence that the car was operated westerly on West First Street, in Los Angeles, and was descending a steep hill from Figueroa to Fremont Street about 9 P. M., November 17, 1917. The hill ends at the easterly line of Fremont Street. The intersection of First and Fremont Streets is level, and in order to stop on the level it is customary to cross Fremont Street before stopping. The plaintiff knew of this custom. The evidence as to where the plaintiff struck the pavement on leaving the car varied from fifteen to seventy-five feet east of the east line of Fremont Street. Thus, according to the witnesses which place the point of accident nearest to the usual stopping place of the car, it was the entire width of Fremont Street, plus fifteen feet from the point where the rear end of the car usually stopped.

The plaintiff testified that after the conductor gave the signal to stop the car he took a seat in the rear of the car with a lady passenger; that plaintiff walked to the rear platform of the car, and stood there holding an upright stanchion with one hand and the handhold of the rear seat with the other. While so standing on the rear platform the car came to a stop; that she did not attempt to alight, but that the car suddenly started forward with a jerk that threw her from the platform; that she alighted on the stone pavement on her head and was rendered unconscious. Jefferson Owens, a boy of ten years, was watching the car from the window of his residence, opposite the scene of the accident. He saw the plaintiff fall from the car, and noticed at the time that the conductor was seated at the time, talking to a lady passenger; that the car was slowing down on the hill from twenty miles per hour to ten; that at ten miles the car either suddenly accelerated or decreased its speed two miles per hour (he testified both

187 Cal.—18

ways) with a jerk that threw plaintiff from the platform to the pavement. The conductor was in France with the A. E. F. and his testimony could not be secured. The only other witness who saw the accident testified that the plaintiff walked down the steps from the rear platform, and either stepped off the car backward or fell off from the lower step while the car was still in motion; that there was no jerk or lurch or unusual motion of the car. Ten witnesses called by the defendant testified that there was no jerk or lurch of the car, and that the car did not stop before reaching its usual stopping place.

[1] Before passing to a consideration of the main points of the case, one or two preliminary matters may be briefly disposed of. The respondent claims that the plaintiff alleges negligence and carelessness in the operation of the car and that the answer by failure to deny this allegation admitted the same. The plaintiff is in error in that regard. As already stated, the complaint specifically counts on the negligent starting of the car, after stopping, and this allegation is specifically denied. The respondent also claims that by reason of the fact that the defendant raised the issue of contributory negligence, its own negligence was thereby admitted. In the first count of the answer, negligence was specifically denied. The second count alleges the contributory negligence of the plaintiff and by failure to deny its own negligence in that count thereby, for the purpose of that count, admitted negligence. The defendant had a right to make inconsistent defenses and did so.

The evidence in the case was conflicting and would have justified the jury in the conclusion that the car never stopped until it had passed beyond the point where the plaintiff was thrown to the pavement; that the car stopped at the point where plaintiff was thrown to the pavement and suddenly started with a jerk, thereby causing her fall; that the plaintiff heedlessly attempted to alight while the car was moving with considerable speed and fell, either because she heedlessly walked off the car backward, or fell off while attempting to alight, or was thrown off by a sudden jerk or lurch of the car while she was on its steps, attempting to alight, or while standing on the platform, either holding on with both hands, as she testified, or while standing without holding on; that at the time of the accident the con-

ductor was forward in the car; or that at the time of the injury he was seated, engaged in conversation with a lady passenger.

The car was a "pay-as-you-enter" car and the usual station of the conductor in such a car is at the rear entrance, where passengers enter the car and from which some of them make their exit, others going to the forward exit. In this state of the evidence the court gave the following instruction: "You are further instructed that if you find from the facts in this case that the conductor was not attending to his duties, in this, that he had knowledge that this plaintiff was about to alight and that said place was a dangerous place in this, that the car was traveling at a fast rate of speed and would necessarily give a lurch or jerk upon reaching Fremont Street, then and in this case I charge you that the acts of the conductor, consisting in his failure to be at his post, constitutes negligence on the part of this defendant, and in that case if you so find, you are instructed to bring in a verdict for this plaintiff."
[2] Appellant contends that this instruction should not have been given, for the reason that there is no issue in the case as to negligence arising from the position of the conductor; that it instructs the jury upon a question of fact; [3] and that it is prejudicially erroneous because it fails to take into account the alleged contributory negligence of the plaintiff, [4] and also the fact that the negligence of the conductor, if any, must be the proximate cause of the injury in order to justify recovery based upon such negligence. Each of the points is well taken. The instruction advances the proposition that if the conductor knew that the plaintiff was about to alight and that the alighting place was dangerous because the car was traveling at a fast rate of speed and would necessarily give a lurch upon reaching Fremont Street, and was not in his place, "then and in this case I charge you that the acts of the conductor, . . . constitutes negligence . . . and in that case if you so find, you are instructed to bring in a verdict for this plaintiff." The instruction thus assumes as a matter of law that it is the duty of the conductor under such circumstances to be at a certain place at the rear end of the car. This is purely a question of fact. The place of duty of the conductor depended upon the terms of his employment, while the

duty of the defendant to the plaintiff arose out of the relationship of passenger and carrier. [5] · The law fixes no particular place for the performance of the duties of the employees of the carrier; it merely fixes the obligation of the carrier to the passenger. A conductor has various duties to perform. (*Cary* v. *Los Angeles Ry. Co.,* 157 Cal. 599, 604, [21 Ann. Cas. 1329, 27 L. R. A. (N. S.) 764, 108 Pac. 682].)

It is argued that in the "pay-as-you-enter" car it is the duty of the conductor to be at the rear end of the car and that decisions recognizing the fact that the conductor might be called to . other parts of the car, such as *Cary* v. *Los Angeles Ry. Co., supra,* are not applicable for that reason. This contention merely emphasizes the vice of the instruction, for it concedes that in the old-fashioned car, where the conductor went about the car collecting fares, his position might be at any point in the car where his duties called him, but that in the "pay-as-you-enter" car, he must remain upon the rear platform, and from this it is apparent that the place of duty of a conductor varies with different circumstances; in other words, it is a question of fact and not of law. The instruction is also erroneous because it entirely overlooks the principle that the negligence must be a proximate cause of the injury in order to justify recovery. This is manifest from the fact that the lurch or jerk referred to in the instruction is the necessary lurch or jerk of the car upon reaching Fremont Street. According to some of the witnesses, in this case the plaintiff was thrown to the ground seventy-five feet before reaching Fremont Street, and thus the fact that the conductor had reason to anticipate such a jerk at Fremont, if it be a fact, would have nothing whatever to do with the injuries to the plaintiff, if she in fact was thrown from the car before the point indicated was reached, for, in that view of the case, the jerk or lurch that caused the accident was not the one the conductor had reason to anticipate, and hence his conduct could not be the proximate cause of the accident. If we accept the testimony of the plaintiff herself, the instruction has no application to the facts, · for the instruction is predicated upon a sudden jerk necessarily resulting from the descent of the hill at a fast speed, while her evidence involves a jerk upon starting from a standstill.

If we accept the testimony of her only other witness to the accident, the boy of ten years, the instruction has no applicability, because the jerk was caused by the increase or decrease of the speed at ten miles per hour, which the jury could have hardly considered "fast," as the car had been running twenty miles per hour, according to this witness. If we accept the testimony of the defendant's sole witness to the accident, there was no jerk or lurch of the car, and the plaintiff was on the lower step. On any of these theories as to the injury to the plaintiff, we fail to see how it could be said that the position of the conductor was a proximate cause of the injury. According to the plaintiff and her witness, the proximate cause of her fall was a sudden and unexpected jerk of the car, with which the position of the conductor had nothing whatever to do, and the instruction introduced an entirely false quantity. We are not considering, let it be observed, what the duty of the conductor or of the defendant was with relation to a usual and expected lurch or jerk of the car; we are merely illustrating the fact that his position could not be the proximate cause of the injury. If there was negligence in failing to warn the plaintiff of such a usual and anticipated shock as described in the instruction, it was not alleged, or counted upon by plaintiff, and such contention is wholly at variance with her complaint and testimony. The proximate cause of the injury would be the shock or jar in any such an event, and not the position of the conductor. [6] The instruction then is faulty not only because it permitted the jury to find a verdict upon conduct of the conductor which could not be a proximate cause of the injury, but also because it in effect required them to find a verdict for the plaintiff if she was injured by a jerk or lurch of the car, necessarily incident to its operation over the intersection of First Street at fast speed, and if the conductor was not in his place.

The respondent justifies the giving of the instruction for the reason that while such negligence is not specifically alleged, it is claimed that the complaint alleges negligence in general terms, and that evidence was given as to the whereabouts of the conductor. The complaint, as already stated, counts upon the negligence of the company in suddenly starting the car with a jerk while the plaintiff was

alighting. There is no general allegation of negligence, and evidence of the whereabouts of the conductor was introduced by the plaintiff over the defendant's objections. However that may be, the instruction was so erroneous and prejudicial that it should not have been given in any event. Respondent's contention that this instruction was cured because of other instructions on the subject of proximate cause and contributory negligence cannot be maintained. The jury were elsewhere instructed, at defendant's request, that unless the plaintiff proved the negligence of the Railroad Company, and that such negligence proximately contributed to the injuries sustained, there could be no recovery; that the defendant was not responsible for the negligence of its employees unless it contributed directly or proximately to the injuries of the plaintiff; that if the plaintiff voluntarily undertook to step from the car while it was in motion and before it reached its usual stopping place and fell as a direct and proximate result of so attempting to leave the car, that plaintiff could not recover.

[7] The difficulty is that when the court specifically instructed the jury that in a certain state of facts they must bring in a verdict for the plaintiff, the jury has the right to assume that the court in that instance is determining as a matter of law that such negligence was the proximate cause of the injury and that there was no contributory negligence. Furthermore, as already pointed out, the position of the conductor was not in any possible view of facts a proximate cause of plaintiff's injuries. [8] The rule is that where an instruction directs a verdict for plaintiff if the jury finds certain facts to be true, it must embrace all the things necessary to show the legal liability of the defendant and to warrant the direction or conclusion that the plaintiff is entitled to a verdict. (*Pierce* v. *United Gas & Electric Co.,* 161 Cal. 176, 184, [118 Pac. 700], citing *Killelea* v. *California etc. Co.,* 140 Cal. 602, [74 Pac. 157].)

[9] Appellant assigns as error the giving of instruction No. 4, as follows: ''The court instructs the jury that the defendant Los Angeles Railway Corporation may be justified under certain circumstances in running its cars at a very fast, or the fastest rate of speed, while under other circumstances to run its cars at a high rate of speed might be

negligence. If you find in this case that the defendant company operated its car at such a rate of speed while approaching West First and Fremont Streets, and that said speed contributed to or was the proximate cause of this accident, then I charge you that your verdict in this case shall be for the plaintiff.'' The instruction is ambiguous because it does not appear therefrom what rate of speed was considered by the court in the last sentence of the instruction. The jury were told in the first sentence of the instruction that the defendant might be justified in running its cars at a very fast or the fastest rate of speed and under other circumstances that a high rate of speed might be negligent. Three rates of speed are dealt with in this sentence—''very fast,'' the ''fastest rate'' and a ''high'' rate. The first two might be justified and the last negligent. The instruction is plainly susceptible of the construction that if the defendant's car was approaching Fremont Street at justifiable rate of speed and that such speed contributed to or was the proximate cause of the accident the verdict should be for the plaintiff, which would be clearly erroneous. Assuming, however, that the speed referred to in the last sentence is the high rate of speed which ''might be negligence,'' the concluding clause of the sentence should be interpreted as follows: ''If you find in this case that the defendant company operated its car at such a rate of speed (as might be negligent) while approaching West First Street and Fremont Street, and said speed contributed to or was the proximate cause of the accident, then I charge you that your verdict in this case shall be for the plaintiff.''
[10] This instruction is still erroneous for several reasons. In the first place, it allows the jury to bring in a verdict for the plaintiff if the rate of speed ''might be negligent.'' In order that the plaintiff should recover because of the speed alone, it is essential that the speed should have been negligent under the circumstances. Furthermore, the complaint does not count upon a high and excessive rate of speed as a basis of recovery. On the contrary, it counts on the shock due to a sudden starting of the car. [11] A more serious objection to the instruction, if possible, is the fact that the jury were instructed that if the speed contributed to *or* was the proximate cause of the accident, their verdict should be for the plaintiff. The court may have intended

to have used the words contributed to *and* proximately caused as synonymous. But, as pointed out by the appellant, a certain amount of lurching and jerking of a car may be attendant upon the speed at which it is usually operated and such lurching and jerking is to be anticipated by the passenger. Under this instruction, the defendant would be liable even though the lurching and jerking of the car was usual upon the customary motion of the car. The instruction also ignores the question of contributory negligence by the plaintiff justifying a. verdict if defendant's conduct contributed to the accident. The jury is specifically instructed that if the high rate of speed of the defendant might have been negligence and contributed to her injuries, she was entitled to a verdict. The instruction was erroneous.

[12] It is true, as respondent points out, that the instructions are to be construed together, but where the instructions are flatly contradictory, as is the case where the jury is instructed upon a specific state of facts to bring in a verdict in favor of the plaintiff or defendant and is elsewhere instructed in general terms not to do so, the instructions must be held to be conflicting and prejudicial, because it cannot be ascertained upon what theory the verdict was returned. The theory of the plaintiff and defendant were diametrically opposed and the evidence, as well as the instructions, was sharply conflicting. Under this condition it cannot be said that there is no miscarriage of justice when it cannot be ascertained from the record upon what theory the jury was authorized by the instructions of the court to render its verdict, or upon what state of facts shown in evidence the verdict was reached.

Because of the foregoing erroneous instructions, it will be necessary to reverse the case, and in view of a new trial it is proper to pass upon some of the other questions presented by the record.

The appellant complains of the refusal to give certain instructions offered on its behalf, one to the effect that if the conductor was seated in the rear open section of the car it was not negligence on his part and could not be made a basis of a verdict against the defendant. Another, that if the conductor was not in his usual position, but was seated and talking to a lady, it could not be considered as negligence and could not be considered except in determin-

ing how the accident occurred. In view of the discussion of the subject herein, it is sufficient to say that the refusal of these instructions emphasizes the error in instruction No. 3.

Instruction ''C,'' asked by the defendant, was a correct exposition of the doctrine of proximate cause as applied to the seating of the conductor and the accident; it also pointed out that the plaintiff must be free from contributory negligence in order to recover. Respondent points out no error in this instruction and we observe none. It is, however, unnecessary to say more than that this refusal emphasizes the error in giving instruction No. 3, in which these two elements of proximate cause and contributory negligence are omitted. The court did not specifically point out the necessary connection between the misconduct of the conductor and the accident, when requested to do so by the defendant, and it is not likely that the jury would have been more able or willing to do so, under a very general direction as to the necessary causal connection between the accident and the conduct of the conductor.

[13] Evidence as to the previous conduct and habit of the conductor as to sitting down and talking to passengers was improperly received, not only because of the fact that the matter was not in issue, but also because of the fact that his habit was not competent (*Langford* v. *San Diego Electric Ry. Co.,* 174 Cal. 729, 732, 733, [164 Pac. 398]; *Steinberger* v. *California Elec. etc. Co.,* 176 Cal. 386, [168 Pac. 570]) to establish the condition at the time of the accident. We need not here consider the effect of the exception to this general rule considered in *Wallis* v. *Southern Pacific R. R. Co.,* 184 Cal. 662, [15 A. L. R. 117, 195 Pac. 408], where circumstantial evidence only is relied upon, and there are no eye-witnesses.

On cross-examination, the boy, Jefferson Owens, having testified on direct examination that the conductor was seated talking with a woman passenger at the time of the accident, was asked concerning his statement in writing theretofore made to the defendant's representative. The question and answer in the statement are as follows: ''Where was the conductor at the time of the accident?'' Answer: ''When the lady fell he ran to the door.'' After his attention was called thereto, he was asked: ''Why didn't you say there that you

saw him sitting talking to her?'' The objection offered and sustained was as follows: ''That is objected to as asking this witness, a youth of tender years, for a conclusion that a grown person could not make.'' Cross-examination as to conflicting statements is one of the most important rights of the adverse party. If it was true that the boy could not explain or understand the question, he should have been permitted to say so in response to the question, and thus the jury could weigh and consider his degree of intelligence.

Judgment reversed.

Shurtleff, J., Lennon, J., and Sloane, J., concurred.