[Civ. No. 4045. Third Appellate District.—November 8, 1930.]

AGNES J. HODGE, Respondent, v. WEINSTOCK, LUBIN & CO. (a Corporation), Appellant.

Ralph H. Lewis for Appellant.

Elliott, Atkinson & Sitton for Respondent.

MR. JUSTICE Pro Tem SHIELDS Delivered the Opinion of the Court.—The defendant is a corporation which conducts a large department store in the city of Sacramento.

Near the center of the store is a large aisle or passageway, running southerly from the front entrance to the store, to the elevators in the rear or southern end of the store. This aisle is marked or defined on the west, or what we will call the left-hand side, by a series of counters and showcases, running in a practically straight line from the front to back near the rear of the store. On the east or right-hand side of the aisle, beginning at the front of the store, were a number of tables upon which merchandise was placed and displayed. These tables were about twenty-eight inches high and were placed in straight alignment and parallel with the showcases and counters on the left-hand side of the aisle. These tables extended about half-way back or southerly from the front of the store. Southerly from the tables and along the right-hand side of the aisle, was placed a platform which was a little over five feet wide and seven feet long. It was six inches high. This platform was movable, and at the time in question had been placed about two feet southerly from the southern end of the tables on the right-hand side of the aisle and in line with, or parallel with, such tables, and with them completing the right-hand border of the aisle. South of this platform was a wide open space running to the elevators, and to the east from such elevators, to another or eastern entrance to the store. On the day in question in this case the plaintiff, with her sister, sister-in-law and niece, entered the store by the eastern entrance, and together moved along westerly to about in front of the elevators, where they turned northerly and started up the main central aisle above described. Plaintiff moved up along the left side of the aisle, which was crowded with people.

Her sister and sister-in-law were five or six feet ahead of her. At a certain point in their progress the sister stepped over to one of the tables or counters on the right-hand side of the aisle. This sister shortly held up some article there on display and called to the plaintiff to come and see it.

Plaintiff started to cross the aisle, through the crowd, to go to her sister when she tripped and fell heavily, breaking her hip and suffering the injuries for which this suit was brought. At the trial the jury found for the plaintiff, giving her a judgment for $5,000, from which this appeal is taken. Defendant's first contention is that there is no evidence from which the jury could find the defendant guilty of negligence.

On behalf of the plaintiff there was evidence that the platform extended out as much as a foot into the aisle and beyond the line made on the right by the series of tables running from the platform to the front of the store. There was no rail or guard around the platform. There was a small molding running around the edge of the platform and extending beyond the level of its sides. When plaintiff started across the aisle to her sister there were people passing between her and the platform. Her sister was on the same level as herself, and the way across seemed unobstructed, except for the crowd through which she was making her way. Looking at the goods on display, seeking her sister, she tripped over the corner of this platform and fell, suffering her injury. Defendant contends that there is no evidence from which it could have been found that plaintiff tripped on or over the platform. Her niece testified that she fell over the "corner of the platform".

It is true that this witness on cross-examination stated that she did not see the platform at the time of the accident, and not until after the plaintiff had fallen. But she saw it then, she saw the location of the platform, she knew the position in which her aunt had fallen and the spot upon which she fell. From these she could see whether or not she had fallen over the "corner of the platform".

The plaintiff herself did not see the platform until after she had fallen, but she knew that she had tripped on something, and there was nothing else upon which she could have tripped except the foot of someone about the platform, and she testified that the thing upon which she tripped "was something more solid than a foot". It was the defendant's duty, when it invited the public into its store, to exercise ordinary care and prudence to keep the aisles and passageways of the premises in and through which, by their location and arrangement, a customer in making purchases

is induced to go, in a reasonably safe condition so as not unnecessarily to expose the customer to danger or accident. From the evidence in this case the court cannot say, as a matter of law, that the defendant performed this duty. There was evidence that this flat platform, only six inches high, was placed in an area where crowds assembled; that it was along the right-hand side of the aisle, but that it encroached as much as a foot out into the aisle; that around it, and particularly north of it goods were on display, on elevated tables which invited the elevated glances of the people in the store, and that crowds surged around it with such difficulty of seeing it as can readily be inferred. Upon this evidence the question of the negligence of the defendant was properly submitted to the jury, and their finding supported by it will not be disturbed.

 Defendant further contends that, admitting the negligence of the defendant, that the plaintiff was guilty of contributory negligence, as a matter of law, and that the implied finding of the jury that plaintiff was not so guilty, was without support in the evidence. It will be recalled that the plaintiff had not seen the platform, nor did she see it at the time of the accident. She entered the store in the usual way and went around the south end of the platform, at what distance, nor through such crowds as does not appear, and went over to the left-hand side of the aisle, and moved north on that side; the aisle was "crowded" with people. Later she worked her way through the crowd, to the right, and while looking at her sister, a short distance away, stumbled upon the platform and fell.

She was not looking for the platform, and did not see it. The defendant owed to her as an invitee upon the premises a reasonably safe place in which to move about, and she had a right to assume that it had provided it. She was, however, bound to take reasonable care for her own safety and it was a question for the jury to decide whether under all the circumstances in this case she should have seen the platform, or could by the exercise of ordinary care have avoided the accident. Their implied finding in her favor on this issue has ample support in the evidence.

 Defendant occupies stronger ground when it objects to an instruction given at the request of the plaintiff and which we must set forth at some length. By this instruction

the jury was told that if plaintiff entered the store as a customer, she had a right to assume that the main aisles and passageways of the store were reasonably safe, and that she was only obliged to exercise the care of a reasonably prudent person for her own safety. The instruction then provided that "although you may find from the evidence that while moving along such passageway the plaintiff Agnes Hodge's *attention was distracted momentarily by something else and she failed to notice the platform placed in one of said main aisles by the defendant, and although you may find from the evidence that said platform was in such position that an ordinarily prudent person would have discovered it,* yet you are further instructed that it is the province of the jury to say whether she was guilty of contributory negligence in that behalf; at all times bearing in mind that a customer in such store has only to use ordinary care for her own safety, that is the care that ordinarily prudent persons exercise under the same or similar circumstances, and if you find from the evidence in this case, that at the time plaintiff was injured she was using ordinary care, and that such injury resulted from, or was caused by defendant's negligence in that behalf, then your verdict should be for the plaintiff". The objection, of course, is to the part italicized. This instruction is clumsily drawn, and if part of it was read narrowly it would be erroneous. But this instruction must be read in its entirety and in connection with other instructions; it is only a part of the charge. It must be read, too, in view of the evidence in the case. And the only time that the plaintiff's "attention was distracted", so far as appears from the evidence, was when her sister called to her from across the aisle and held up a piece of goods for her to examine. In view of this fact, the instruction seems clearly to mean that it was for the jury to say whether or not the fact that the plaintiff, through permitting her attention to be "distracted momentarily", by which she failed to see the platform which otherwise "was in such position that an ordinarily prudent person would have discovered it", constituted contributory negligence. In other words, whether or not the "distraction" which was shown in this case was under the circumstances a want of ordinary care. The jury were specifically told this in the portion of the instruction immediately following the italicized portion where

the court said that it was "the province of the jury to say whether she was guilty of contributory negligence *in that behalf*".

As thus read the instruction is a correct statement of the law. Whether or not a mere momentary distraction, under the circumstances of plaintiff's case, and in the surroundings in which she was placed, was a neglect of ordinary care, was clearly a question for the jury to answer. "Mere abstraction . . . does not constitute contributory negligence." (*Wise* v. *Maxwell Hardware Co.*, 94 Cal. App. 765 [271 Pac. 918]; *Meindersee* v. *Meyers*, 188 Cal. 498 [205 Pac. 1078].) The facts in this case do not bring it within the rule of those decisions which hold that momentary *forgetfulness* of a known danger, which forgetfulness is not induced by some sudden and adequate disturbing cause, is itself, as a matter of law, contributory negligence. (*Meindersee* v. *Meyers, supra*.) Read in its entirety this instruction can mean nothing else. Otherwise the portion of the instruction relating to "distraction" would have no meaning or relevance. This view is strengthened by the fact that immediately below the part objected to, and as part of the same instruction the jury are told that the plaintiff was required to "use ordinary care for her own safety, that is, the care that ordinarily prudent persons exercise under the same or similar circumstances". Disregarding this view, and giving the instruction the interpretation of a critical judgment, the most that can be said of it is that it is confusing and uncertain. But the law upon the point to which it relates is elsewhere set forth so clearly, and the instruction is followed by others which so plainly declare the law relating to contributory negligence that we are satisfied the jury was not misled by it.

██ Defendant next objects to an instruction which reads as follows: "The proprietor of a store must keep the portion of the premises permitted to be used by the prospective buyer in a reasonably safe condition, and if you find in this case that the injury suffered by plaintiff was caused by defendant's neglect to do so, a recovery of damages may be had for the injuries proximately caused thereby." He contends that this instruction violates the well-established rule that "where an instruction directs a verdict for plaintiff if the jury finds certain facts to be true, it must embrace all

of the things necessary to show the legal liability of the defendant and to warrant the direction or conclusion that the plaintiff is entitled to a verdict". (*Starr* v. *Los Angeles Ry. Corp.*, 187 Cal. 270 [201 Pac. 599, 602].) Appellant's whole objection might be dismissed with the statement that the instruction does not direct or advise a verdict for the plaintiff. It goes little if any further than the usual instruction in negligence cases that where one is shown to have been guilty of negligence, he is liable in damages for the injuries proximately occasioned thereby. In a proper case, as here, other and qualifying instructions follow. But reading the instruction as appellant reads it, this rule has never been carried so far as to hold the giving of such an instruction as the one in question to be a reversible error. The first case in which the above rule was announced in this state was *Killelea* v. *California Horseshoe Co.*, 140 Cal. 602 [74 Pac. 157]. Here the court instructed the jury that if they found certain facts, "the plaintiff is entitled to a verdict". It will be noted that the direction was that, in such an event the plaintiff was· "entitled" to a verdict. No mention is made of any other or qualifying instructions. In *Pierce* v. *United Gas & Elec. Co.*, 161 Cal. 176 [118 Pac. 700, 703], where this question next comes before the court, the direction to the jury was that they "*should* render a verdict for plaintiff" if they found certain facts to be true. The facts referred to did not include all necessary to justify the verdict referred to, and it will be observed that upon the theory stated, a verdict was definitely directed. The latest case dealing with this question is *Starr* v. *Los Angeles Ry. Corp.*, 187 Cal. 270 [201 Pac. 599, 601]. Here the court told the jury with specific positiveness that if they found certain facts, they were "*instructed* to bring in a verdict for the plaintiff". The instruction in this case omitted many elements necessary to a legal recovery, and was erroneous in other particulars. It will be noted that in all of the above cases a verdict upon the two narrow statements of fact was definitely directed by the court. In one case the jury were told that the plaintiff was "entitled" to a verdict, in another that the jury "should" give him a verdict, and· in the third they were "instructed" to do so. The instruction in this case simply states that in certain circumstances stated "a recovery of damages *may*

be had for the injuries proximately caused thereby". This instruction is far from a direction to find for the plaintiff upon the facts stated. It simply says that upon such facts you "may" find a verdict. Other instructions fully setting forth the defenses of defendant tell the jury with equal clarity the conditions upon which they "may not" find for the plaintiff. Read all together the charge properly states the law, and the instruction in question does not conflict with other, and qualifying ones. In any event the instructions are not so "flatly contradictory . . . that they must be held to be conflicting and prejudicial". (*Starr* v. *Los Angeles Ry. Corp., supra.*)

Other objections to other instructions seem to be without substantial foundation.

█ Defendant's next objections are based upon what it contends was the misconduct of counsel for plaintiff. The first objection grew out of statements of counsel which tended to inform or suggest to the jury that the plaintiff was impoverished and without means. The statements criticised were made under these conditions. During the course of the trial when counsel for plaintiff offered certain bills or charges against plaintiff, for hospital services, and for physician's fees, it appeared that these bills were marked paid. Counsel for defendant objects to the bills upon the ground that if the bills had been paid by someone other than plaintiff and gratuitously in her behalf, that she could not recover sums which she had not been compelled to pay. Mr. Atkinson, of counsel for plaintiff, then said, "the plaintiff is liable for the bills no matter who paid them, the plaintiff had no money". Counsel for defendant still contended that plaintiff could not recover if she did not pay the bills. During the discussion of this question Mr. Atkinson stated: "The plaintiff in the action paid all the money she had in the world, on account of these bills." Counsel for defendant objected to this statement, assigned it as error and requested the court to instruct the jury to disregard it. This the court did. A witness was then called who testified that of the total charges the plaintiff paid $550, the plaintiff's sister-in-law paid $390 and the witness herself, the plaintiff's niece, borrowed $200 and paid the balance. Asked as to whether there was an understanding that the plaintiff was to pay these bills when she could, the

witness answered, "yes, she was to pay them when she could". Later, when the case was being argued to the jury, Mr. Elliott, of counsel for plaintiff, among other things, said, "and the plaintiff was forced to pay out all the money she had". Counsel for defendant assigned this as misconduct, whereupon Mr. Atkinson, interrupting, said, "she testified she paid out all the money she had". This again was assigned as error. The court thereupon admonished the jury that if counsel in their zeal "go beyond what has been proven . . . you will disregard that . . . you will form your judgment on what has been testified to".

It is well settled that evidence of poverty is not admissible in cases such as this, and that its admission is reversible error. *Ensign* v. *Southern Pac. Co.*, 193 Cal. 311 [223 Pac. 953], and many cases cited. In the present case no evidence was offered to this effect. The first statement of Mr. Atkinson was made to the court in the discussion of a legal question. There was nothing in the case to support it, and the court promptly told the jury to disregard it. We think that this disposed of the matter so far as that statement was concerned.

Following this the plaintiff's niece testified that she and her mother paid part of the bills. No reference was made to the plaintiff's property or possessions. Later she testified that the plaintiff was to repay her "when she could", and that she had not done so. All this was admitted without objection. We do not think that this was evidence of poverty. It was given of necessity to overcome defendant's objection. An inference might be drawn from it that the plaintiff was destitute. But her inability to pay at the time might have been caused through the possession of assets upon which she could not realize. The inference of poverty in such a case is no stronger than if the bills had been offered, unpaid, with no comment or explanation. The remarks of counsel during the argument should not have been made. If there had been any evidence in the record of the plaintiff's poverty, whether objected to or not, it would have been wholly irrelevant, and the references to it might have necessitated a reversal of the judgment.

But where, as here, there is no evidence of poverty, a statement that the plaintiff was needy does not constitute reversible error. Even an erroneous instruction by the court

that the jury had a right to consider the pecuniary condition of the plaintiff, when there was no sufficient evidence in the case of such a condition, will not justify a reversal. (*Lawrence* v. *Southern Pac. Co.*, 189 Cal. 434 [208 Pac. 966].)

The remaining assignment of error is the claim that counsel for plaintiff tried to tell the jury or to lead them to believe that the defendant was protected by indemnity insurance. Too frequently this is done, and the courts are confronted with the close and difficult question of determining whether or not the methods used were designedly employed for the purpose of influencing the jury, or whether or not they were successful in doing so. In this case the question arises upon this state of facts as disclosed by the record. Defendant had two photographs which it claimed correctly represented the scene and conditions of the premises in so far as related to the position of the platform and the arrangement of other furnishings as they were at the time of the accident. One of defendant's witnesses identified the pictures and they were offered in evidence. Counsel for plaintiff then interrogated the witness with reference to when and by whom the pictures had been taken. He replied that they had been taken about three days after the accident and by a Mr. Thielen. He was then asked, "Who is Mr. Thielen?" Upon objection being made, counsel for plaintiff stated that the facts sought to be discovered went to the authenticity of the picture, and the court overruled the objection.

Counsel for plaintiff then further asked, "What connection did he have with the accident, if any?" to which the witness answered, "He is our insurance broker." After answering that he did not know at whose request the picture was taken, but that Thielen arranged for it, the witness was further asked, "It was taken by him as your insurance broker; and is that same statement true as to the other time and place and circumstances under which the picture known as defendant's exhibit B for identification was taken?" The witness answered that he presumed so, that he did not see the picture taken, that he was present when they started, but did not stay.

Later, and while still inquiring into the conditions under which the pictures were taken, the witness replied that

there were present at the taking Mr. Thielen, the photographer and, he thought, Mr. Norton. Counsel for plaintiff then asked, ''Do you know Mr. Hallinan?'' and upon an unimportant reply of the witness repeated, ''Do you know Mr. Hallinan, of the Eagle Indemnity Company?'' to which the witness answered that he did not. Later, counsel, further addressing the witness, said, ''Then as I understand you, Mr. Hails, you were not there, but when you left, a Mr. Thielen, your broker, insurance broker, was there, and the photographer, Mr. Hodson, and you are not positive as to anybody else being there, at the time these pictures were taken?'' to which the witness replied that he had not stayed until the pictures were taken. There is no rule better settled than that if a party introduces evidence that the defendant in such a case as this is insured, or by deliberate purpose or by successful tactics purposefully suggests this fact to the jury, it constitutes reversible error. This rule is stated and the authorities collected in the case of *Perez* v. *Crocker*, 86 Cal. App. 288 [260 Pac. 838]. But the evidence must have been brought out, and the statements made needlessly, or with some evidence of deliberate purpose, as in the case of *Citti* v. *Bava*, 204 Cal. 136 [266 Pac. 954], where the court speaks of and penalizes the ''avowed purpose and successful attempt'' of counsel to get such facts before the jury. It must have been brought to the jury ''by questions designed solely for that purpose''. (*Nichols* v. *Nelson*, 80 Cal. App. 590 [252 Pac. 739, 742]; *Pierce* v. *United Gas & Elec. Co.*, 161 Cal. 176, 188 [118 Pac. 700]; *Eldridge* v. *Clark & Henery*, 75 Cal. App. 516 [243 Pac. 43].) In the case before us, the pictures were offered as showing the physical conditions of the premises where the accident occurred, as of the time of the accident. The party who took them, and the party who arranged to have them taken, were not before the court. The plaintiff had not been present when the pictures were taken. Plaintiff, apparently in entire good faith, disputed the correctness of the pictures, contending that the articles upon the platform as shown in the picture, were not as they were at the time of the accident, and that the position of the platform, as shown in the picture, was also different. Plaintiff had a right to make critical inquiry into all facts relating to the picture's correctness. To this end, she had a right to show when it

was taken, by whom, and whether or not such person held an adverse interest. Her questions seem reasonably designed to bringing out this information. And if the evidence, or suggestion of insurance is brought out as an incident to the proof of some other fact properly involved, it is without error. (*Nichols* v. *Nelson, supra; Potter* v. *Driver,* 97 Cal. App. 311 [275 Pac. 526].) The rule in such cases is more fully stated in *Dermer* v. *Pistoresi, ante,* p. 310 [293 Pac. 78]. The repetition by counsel in his question where he said, ''Mr. Thielen, your broker, insurance broker'', was improper. But the fact that Thielen was defendant's ''insurance broker'' was already before the jury, through the testimony of a witness for the defendant, and this repetition could not have been productive of injury. Likewise the reference by counsel to the absent Mr. Hallinan as being ''of the Eagle Indemnity Co.'', was of doubtful propriety, dependent upon whether or not it was made in good faith, for the purpose of identifying the party referred to. Giving counsel the benefit of the consideration, these two instances of questionable statement do not warrant the reversal of a judgment otherwise free from error, and apparently fair and just.

The judgment is affirmed.