[L. A. No. 15931. In Bank.—December 31, 1936.]

MARY V. TUTTLE et al., Respondents, v. W. H. CRAW-
FORD et al., Defendants; WALTER YAMADA et al.,
Appellants.

Hugh B. Rotchford, Roy S. Nizuno and Everett H. Smith for Appellants.

Thomas M. Bergin for Respondents.

Edmund G. Brown and Harold C. Brown, as *Amici Curiae* on Behalf of Respondents.

SEAWELL, J.—Plaintiffs are husband and wife. Plaintiff Mary V. Tuttle is a woman in middle life and the mother of three children. On the morning of November 28, 1934, after conveying her children to school, she parked her automobile near the market place of appellants and entered the market premises where she was accustomed to trade. The market was somewhat general, and the floor space thereof allotted to the trades people who conducted their respective businesses therein was cement. Appellants conducted a general grocery business and also dealt in vegetables. Plaintiff

Mary V. Tuttle, upon entering the store or stall conducted by appellants, walked some distance down the aisle within the space occupied by appellants to the refrigerator where the milk was kept. She took therefrom a bottle of milk and on her way back to the vegetable department she stepped on a space of the cement floor which was wet. Her feet slipped and she fell heavily to the floor, fracturing her right femur (thigh bone), and sustaining a contusion and bruises of the right hand, of the right elbow and right lower limb, and suffering general shock. Said wet area of the cement floor was described as being three feet in diameter, and there seemed not to be anything so unusual or striking about it as to have especially attracted her attention as she passed it when she proceeded to the milk refrigerator or on her return to the vegetable section. The wet space was described as being darker in color than the dry portions of the floor. Water dripping from heads of lettuce which had been immersed in tubs or bins containing water to freshen them had formed a pool on the floor as the lettuce was transported from the tubs and placed on the racks or display stands. It is also claimed that portions of lettuce leaves and particles of vegetable matter, negligently left on the floor within the wet area, also contributed to the fall, which was the proximate cause of the injuries which Mrs. Tuttle sustained.

Judgment went against appellants, both as individuals and as copartners, and in favor of plaintiffs, aggregating the sum of $4,510. The appeal is taken from the judgments and orders denying the motions for judgment notwithstanding the verdicts. Judgment also went against W. H. Crawford, a third defendant, but a new trial was granted as to him and the fictitious names under which it was alleged he carried on business.

The statement of questions involved in the appeal as formulated by appellants may be thus summarized: First, the burden of proving negligence on the part of appellants is not sustained by the evidence; second, that had Mrs. Tuttle exercised ordinary care in making observation as to the things about her she would have avoided the wet spot upon the floor in her return from the refrigerator to the vegetable stands; third, that the want of care is so obvious on her part as to become a question of law and not one of fact; fourth, that the court erred in instructing the jury "that it was presumed

that she exercised ordinary care for her own safety'', in the face of the fact that she testified fully at the trial as to all of her actions; fifth, that the court erred in instructing the jury that ''in assessing damages'' they were to take into consideration certain items. ■ It is claimed that the sentence or phrase above quoted, which is taken from another instruction defining the measure of damages, was equivalent to an assumption on the part of the court that plaintiff was entitled to recover and all the jury had to do was to fix the damages. In other words, it amounted to a directed verdict. This assignment is so utterly devoid of merit that it will be disposed of at once. The contention is that said sentence or phrase should have been preceded by qualifying or conditional words to the effect that the question as to the method of arriving at damages should only be considered in the event that the jury should determine that plaintiffs were entitled to damages. An instruction given at the request of the defendants, and which immediately preceded the instruction containing the above-quoted words complained of, shows so clearly that the words objected to were directed to and related solely to the *method* of assessing damages, and not to plaintiffs' *right* to recover damages, that it will only be necessary to quote it. It reads:

''The fact that I have instructed you or may instruct you on the measure of damages in this case is not to be taken by you as any intimation that I believe or do not believe that plaintiffs are entitled to recover damages. Such instructions are given you because it is the duty of the court to instruct you upon the entire law in the case. You are not to assume from the fact that I have instructed you concerning the measure of damages that I do or do not believe that plaintiffs are entitled to recover anything.''

Language must be construed with reference to the subject-matter to which it clearly relates or which it qualifies. The only subject discussed by either instruction was with respect to the correct rule which should be applied to personal injury cases, and none other. Besides, the court's instruction as above set forth is a complete answer to appellants' objection.

■ There is no merit in the claim that the evidence does not support the implied findings of the jury that defendants were guilty of negligence, or that respondent Mary V. Tuttle

was not guilty of contributory negligence. Whether the floor of a store or public market place was so negligently maintained as to render the person responsible for its condition liable in damages is a question of fact to be decided by the jury. The same rule is also applicable to contributory negligence. The instant case is a typical jury case. The injured woman, in going to the refrigerator, passed near the discolored area, but as there was nothing about it to warn her of possible danger, her attention was not specifically directed to it and if she noticed it at all she probably did so in a subconscious fashion. On returning to the vegetable stands she advanced to the damp spot and without stopping to make inspection as to its nature she stepped into it and fell, with the result described. The question for decision is, would a person placed in respondent's situation, possessing ordinary experience in such matters, knowing what she knew and seeing what she saw, have used greater caution than she used and made a closer scrutiny of the area which was darkened by moisture, and upon so doing have anticipated the dangerous consequences which might follow if she stepped upon said area? Or, would the average person, presuming on the fitness of the cement floor to serve its purpose, have probably acted as she acted? That it is the duty of storekeepers to keep the floors of their premises safe for those who must pass over them in the transaction of their business must be conceded. The fact that the attention of persons who visit public markets is attracted by the display of the wares offered for sale and more or less absorbed by the transactions which they have in mind would seem to increase the necessity of exercising care to the end that the floor spaces and aisles allotted to the use of customers should be made safe and kept fit for such purpose.

"It is the rule in California that the keeper of a public place of business is bound to keep his premises and the passageways to and from it in a safe condition, and must use ordinary care to avoid accidents or injury to those properly entering upon his premises on business." (*Brown* v. *Holzwasser*, 108 Cal. App. 483 [291 Pac. 661]; *Schmidt* v. *Bauer*, 80 Cal. 565 [22 Pac. 256, 5 L. R. A. 580]; *Hodge* v. *Weinstock, Lubin & Co.*, 109 Cal. App. 393 [293 Pac. 80]; *Hook* v. *City of Sacramento*, 118 Cal. App. 547 [5 Pac. (2d) 643]; *Touhy* v. *The Owl Drug Co.*, 6 Cal. App. (2d) 64 [44 Pac. (2d)

405] ; *McClurken* v. *Ralph's Grocery Co.,* 130 Cal. App. 529 [20 Pac. (2d) 66].) All of the last-cited cases deal with injuries resulting from falls caused by the feet slipping on account of oil or grease or other substances which sometimes become deposited on floor spaces, or injuries inflicted because of improper floor conditions, and in each case they are held properly referable to juries for decision. There is some evidence in the instant case to the effect that one or more lettuce leaves or parts of leaves were in the wet area, and therefore they could have been seen if proper care had been taken by respondent. Whether they were seen by respondent before the accident or after it occurred is not made clear. In each one of the cases last above cited there was evidence to the effect that the oil or grease or defects or unfit floor conditions could have been detected had greater care been taken, but it was held that the *quantum* of care which the law exacts is a question relative to the facts of each particular case. ■ But even if there were one or two lettuce leaves or portions of leaves on the floor, it does not follow that respondent was negligent in failing to see them. On this issue appellants' employee testified that he had swept the water from the space which had been made wet five or eight minutes before the accident occurred. If he swept, he swept poorly, as the respondent's right stocking and dress bore evidence as to vegetable particles adhering to them. Stains were also visible on said garments, showing contact with unclean water. Appellants were accustomed to spread sawdust over wet portions of the floor, but had failed to do so on this particular occasion.

The contention of appellants is that had Mrs. Tuttle looked she would have seen, and if she had seen she would not have walked into the wet area. "To look is to see" is a doctrine often resorted to in automobile accident cases and in cases where persons walk into open elevator shafts where the danger is evident. This argument, which is often applied to railway trains and automobiles, obviously cannot be applied with equal force and effect to one who walks into a discolored area of a cement floor where continuity of color cannot well be expected by reason of cement being susceptible to stains and discolorations. To walk into certain dangers such as railway trains, moving automobiles or open elevator shafts is one thing, and to walk as an invitee upon discolored spaces on cement flooring which holds out no sign of danger other

than the bare possibility that it may be wet is quite another thing, and the rule applied to moving railway trains and automobiles cannot be logically or fairly applied to the facts of the instant case. Whether Mrs. Tuttle was negligent in presuming that the floor of appellants' store was in a safe and fit condition to be traversed by customers is a question about which there might well be a division of opinion among average persons, but it certainly cannot be said that the weight of opinion would so strongly preponderate on the side of negligence on the part of respondent as to take the question out of the realm of fact and transport it into a question of law.

The only other matter that requires attention is the following instruction:

"You are instructed that the law presumes that a person takes ordinary care of his own concerns. I therefore instruct you that the law presumes that plaintiff Mary V. Tuttle exercised ordinary care for her own safety at the time of the accident here involved."

Inasmuch as the plaintiff testified at length in her own behalf to the circumstances which caused her injuries, appellants insist that it was prejudicial error to give the respondent the benefit of the disputable presumption "that a person takes ordinary care of his own concerns". (Sec. 1963, subd. 4, Code Civ. Proc.) Appellants rest their claim for reversal almost entirely upon what is said in *Paulsen* v. *McDuffie*, 4 Cal. (2d) 111 [47 Pac. (2d) 709], particularly in that portion wherein it is said that it was "difficult to see how there was any place for a presumption as to plaintiff's conduct. What he did on that occasion was entirely covered by the evidence in this case and there was neither necessity nor reason for indulging in any presumption upon that subject. That instruction had no place in this case and should not have been given." The opinion then points out that had the case been one where contributory negligence on the part of plaintiff would have defeated his claim for damages, the consequences following the giving of the instruction might have been most serious and possibly might have required a reversal of the judgment. The fact that contributory negligence on the part of plaintiff could not have defeated his claim rendered it unnecessary to discuss the consequences that might follow had the question of contribu-

tory negligence been a material issue in the case. We were of the opinion, however, that the giving of the instruction worked no serious prejudice to the defendant, and we affirmed the judgment.

What we said in the Paulsen case to the effect that the giving of the instruction criticized by the appellant worked no serious prejudice to the defendant applies with equal force to appellants in the instant case. Said instruction stands alone as a general proposition of law. Apart from the instruction itself, no reference was made by any other instructions to the rule or subject of presumptions. The presumption is a natural one, and the bare code section, as given by the court, told the jury nothing that the philosophy of life and human experience do not impart to the average person. The jury was not told that it was bound to find according to a presumption, or that it might stand as evidence unless contradicted. No instruction was given defining the force or effect of presumptions, and it is probable that the instruction as given made no impression whatever on the minds of the jury. If it could have had any conceivable effect on the minds of the jury, it was absolutely overcome and nullified by six other instructions given by the court which we will separately and briefly refer to. In said several instructions the jury was told that they could not render a verdict against the defendant unless the plaintiff had established her case by a preponderance of all the evidence; that the keeper of a public place of business is not an insurer of the safety of its patron and it does not follow that the keeper of the place is liable in damages for injuries suffered therein; that before such person may recover for injuries suffered therein it is incumbent upon such injured person to prove by a preponderance of the evidence that the keeper of the place was guilty of negligence; that the mere fact that plaintiff may have been injured is *no indication* that plaintiff is entitled to recover anything from any of the defendants; that the burden of proving negligence rests upon the plaintiff at all stages of the proceedings; that the fact of her injury does not raise a *presumption* of negligence on the part of the defendants; that the extent of the duty of the keeper of a store to those who enter for business purposes is to exercise reasonable care to keep the floor of the store in such condition that with the exercise of reasonable

care on the part of the customer such customer will be reasonably safe, and unless the jury should find from a preponderance of the evidence that the defendants failed to exercise that degree of care, the verdict must be for the defendants; that if plaintiffs have not sustained the burden of proof, or if the evidence is evenly balanced, or if it preponderates in favor of defendants, or if the jury should from a preponderance of the evidence find that said Mary V. Tuttle contributed, no matter how slightly, to the accident, the verdict must be for the defendants. In the above summary of the instructions given at the request of the defendants we have substantially adopted the language of the same, but we have not set forth all of the repetitions therein contained which admonished the jury that the burden of proof was upon plaintiffs to establish by the evidence the negligence of defendants. Full instructions were given as to contributory negligence, and they certainly were as favorable to the defendants as the law would permit. There was no serious conflict in the evidence as to the cause of or the manner in which the injuries were inflicted. Taking the instructions as a whole, we are well satisfied that defendants suffered no serious prejudice by the giving of the instruction of which complaint is made. (*Paulsen* v. *McDuffie*, *supra*.) Conceding it to be academically erroneous, it clearly falls within the mandate of article VI, section 4½ of the Constitution, which provides that unless the error or misdirection complained of shall have resulted in a miscarriage of justice no judgment shall be set aside or new trial granted by reason of said error. After an examination of the entire cause we are of the opinion that no miscarriage of justice resulted from the giving of the instruction complained of. The judgment and orders appealed from are affirmed.

Langdon, J., Shenk, J., and Waste, C. J., concurred.

THOMPSON, J., Dissenting.—I dissent.

The majority opinion concedes that under the testimony the question of whether the respondent was guilty of contributory negligence was one of fact for the jury, and yet it is held that the giving of the instruction to the effect that the law presumed that she exercised "ordinary care for her

own safety at the time of the accident here involved" was not prejudicial. I cannot assent to such a holding.

In the first place, the respondent testified at length concerning the circumstances of the accident and the manner thereof. There was in my opinion no room for the operation of the presumption. (*Paulsen* v. *McDuffie,* 4 Cal. (2d) 111 [47 Pac. (2d) 709].) What is a presumption? According to Ballentine's Law Dictionary, it is "A term used to signify that which may be assumed without proof, or taken for granted." Where the facts are proved, how can we assume or, as we said in the cited case: "In the present action, plaintiff was not only alive but was called as a witness and testified fully as to all of his actions just prior to and at the time of his injury. Other witnesses observed plaintiff and gave in detail a complete account of the whole affair which resulted in plaintiff's injury. It is difficult to see how there was any place for a presumption as to the plaintiff's conduct. What he did on that occasion was entirely covered by the evidence in the case, and there was neither necessity nor reason for indulging in any presumption upon that subject. That instruction had no place in this case and should not have been given. Had this been a case where the contributory negligence of the plaintiff would have defeated his claim for damages, the consequences following the giving of that instruction might have been most serious, and possibly might have required a reversal of the judgment." Nor is it possible to say, because instructions were given upon the subject of burden of proof and contributory negligence, that the instruction here given did not harm defendants' case, as a moment's reflection will demonstrate. Who can say but that the jury, taking the instruction for its face value, resolved the doubt in favor of the respondent on the question of contributory negligence. Or to put it in another way: If, in the absence of evidence explanatory of the accident, the instruction had been properly given, we would hold that the presumption was sufficient to sustain the burden of proof and negative contributory negligence. (*Smellie* v. *Southern Pac. Co.,* 212 Cal. 540 [299 Pac. 529].)

Edmonds, J., concurred.

Rehearing denied. Edmonds, J., voted for a rehearing.