[Civ. No. 4955. Fourth Dist. June 13, 1955.]

MELBA LEWIS et al., Appellants, v. W. G. HENDRICKS, Respondent.

Broaddus & Golden and John J. Golden for Appellants.

Lamb, Hoge & Killion for Respondent.

GRIFFIN, J.—Plaintiffs, husband and wife, brought this action against defendant, an osteopathic physician and surgeon, for damages. The first three causes of action allege that defendant has been guilty of malpractice upon Mrs. Lewis. The other three are based on the claim that defendant performed an operation upon her without her consent. A jury verdict was returned in favor of defendant. On this appeal, the one question involved is the giving of certain instructions offered by defendant which plaintiffs claim were prejudicially erroneous.

Before the selection of the jury, the trial court, in explaining the nature of the action to the jury, stated that it was what is commonly known as a malpractice case, and that the complaint alleges that the defendant was negligent. No mention was made of the last three counts pertaining to the lack of consent. The court, in instructing the jury, at plaintiff's request, in effect instructed it in several different instructions that by undertaking professional service to a patient, a physician and surgeon impliedly represents that he possesses that degree of learning and skill ordinarily possessed by physicians and surgeons of good standing, practicing in the same locality; that it is his duty to use the care ordinarily exercised in like cases by reputable members of the profession practicing in the same locality; and that a violation of any of these duties is a form of negligence called malpractice. It then concludes with the clause:

"If you would find that the defendant failed in any of the duties I have mentioned, and that such failure was a proximate cause of injury to the plaintiff, then your verdict must be in plaintiff's favor."

The court then gave plaintiffs' requested instruction that:

"When an adult patient is in possession of her faculties and in such physical health as to be able to consult about her condition, and no emergency exists making it impracticable

to confer with her, her consent is necessary to authorize a surgical operation upon herself.

"If a surgeon performs an operation on such a person without her consent, the surgeon's acts in so doing are an assault and battery, and he will be liable in damages for any injury proximately resulting from the operation. (B.A.J.I., 1950 Supp. 214-P.)"

It should be here noted that the court refused to give defendant's proffered instruction on this same subject matter, i. e.:

". . . if you find that the plaintiff . . . consented to the performance upon her by defendant of an abortion, your verdict must be against the plaintiffs and in favor of the defendant."

This contained a written notation of the court: "REFUSED: No Evidence." Then follows a series of instructions pertaining to the care ordinarily required of a physician and surgeon which were offered by defendant and given by the court, and each of these instructions concluded with a statement which in effect told the jury that unless the evidence shows the defendant negligent, it would be "insufficient to warrant a verdict for the plaintiffs," or "no judgment against the defendant can be sustained," without indicating any distinction between the first three and the remaining three causes of action.

It is plaintiffs' claim that there was evidence before the jury which was sufficient to support a verdict for plaintiffs under either theory indicated; that accordingly, the instructions complained of, in effect told the jury to disregard the issue pertaining to lack of consent; and that before a recovery could be had upon either theory ·it was necessary to show negligence of the defendant. There is merit to this contention if the evidence would sustain a finding on the theory of lack of consent to the performance of an operation by defendant, and defendant did in fact perform some form of operation upon Mrs. Lewis. (*Pierce* v. *Paterson,* 50 Cal.App.2d 486 [123 P.2d 544]; *Starr* v. *Los Angeles Ry. Corp.,* 187 Cal. 270, 280 [201 P. 599]; *Gillette* v. *San Francisco,* 41 Cal.App. 2d 758, 765 [107 P.2d 627].)

Defendant's only answer to the claim is that plaintiffs offered and the court gave similar instructions to those offered and given by defendant, and accordingly plaintiffs cannot be heard to complain. The difficulty with this position is that plaintiffs' instructions told the jury that if defendant was

negligent, as indicated in the instructions, they should find in favor of the plaintiffs, which would be a correct instruction as to the first three counts, notwithstanding the remaining three counts, but defendant's instructions in effect told the jury that if defendant was not negligent the jury must find a verdict for defendant, notwithstanding the three remaining counts.

We will therefore consider the evidence pertaining to these last three counts. Defendant lived in Bakersfield. Plaintiffs lived in Willits, California. On June 26, 1951, Mrs. Lewis was treated by defendant in Bakersfield for thyroid trouble and was given a vaginal examination. In August, 1951, defendant examined her again and she was told she might be pregnant or she might have a tumor. On September 11, 1951, defendant examined her again, due to her constant pain. X-rays were taken and, according to her story, she had a vaginal examination of some description, with a speculum, as well as colonic treatment, and she described some instrument defendant had in his hand at the time as containing a knife-blade and that the use of it was causing her such great pain she asked him what he was doing and he said he was removing blood clots so she could menstruate properly; that the pain continued and he finally gave her an injection in the arm but it did not relieve the pain and the doctor continued with the work he was doing and she noticed a number of blood-coated gauze packs being discarded; that it seemed to her it took hours to perform this work although it actually required about one and one-half hours; that after performing all this work the defendant told her to remain in a hospital in Bakersfield for about four days because he thought she was having a miscarriage; that she refused to follow these instructions and returned home. On September 18th, 1951, she was examined by a doctor in Lake County and that doctor found a laceration of the cervix about ¼ inch wide and extending the entire circumference of the cervix, and that in his opinion this laceration of the cervix was caused by some "*external*" force of terrible amount and was apparently quite new but showed some evidence of healing. At that time she was given an anaesthetic. A curettement was performed and the fetus was removed. That doctor described her as a very pale girl, running a high fever, and testified that there was a distinct odor from her and extreme tenderness was noted in the lower part of the abdomen; that a mass in the abdomen was located near the uterus which

contained a considerable amount of blood; that a sterile pelvic examination was performed; that the afterbirth and portions of the pregnancy were coming out through the opening and the entire vagina was filled with blood; that the laceration of the cervix was noted; that the afterbirth had deteriorated terribly and had been damaged to a great degree and had disintegrated; that the uterus was infected; that in his opinion the fetus had been dead somewhere between 3 and 10 days; and that thereafter a hysterectomy was performed. He testified he was unable to diagnose her complaints as of September 11, 1951, but stated that if she complained of cramps and was spotting on September 11, 1951, this would indicate a pregnancy was not going well at that time.

Defendant testified he performed no abortion and did nothing to produce an abortion, nor did he operate on Mrs. Lewis, nor was there any intention of his or of Mrs. Lewis that an operation was to be performed at that time. Defendant concedes that there was sufficient evidence to submit to the jury the question of defendant's negligence in reference to the first three causes of action, but contends there was no evidence that defendant performed any operation upon Mrs. Lewis, and accordingly no consent was required for the acts performed by him; that no cause of action was proven in relation to the last three counts; and accordingly the court was correct in instructing the jury as it did.

From the testimony produced the jury might reasonably infer that the defendant did in fact use a knife and brought about the condition found; that this constituted an operation within the meaning of the law; that Mrs. Lewis did not know that such an operation was contemplated; and that defendant performed it without her consent. At least, there was sufficient evidence to permit this question to be submitted to the jury under proper instructions. Plaintiffs were endeavoring to recover in this action upon two distinct and separate theories. The jury was told in effect that no verdict could be rendered against defendant unless it found defendant guilty of negligence. In another instruction it was told that defendant may be liable in damages if an operation on such person is performed without her consent. It has been often held that instructions are to be construed together, but where the instructions are flatly contradictory, as is the case where the jury is instructed upon a specific set of facts to bring in a verdict in favor of the plaintiff or defendant and is elsewhere instructed in general terms not to do so, instructions

must be held to be conflicting and prejudicial because it cannot be ascertained upon what theory the verdict was returned. (*Starr* v. *Los Angeles Ry. Corp., supra.*)

Judgment reversed.

Barnard, P. J., and Mussell, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied August 11, 1955.