[Civ. No. 5200. First Appellate District, Division One.—January 10, 1927.]

## DAVID G. NICHOLS et al., Respondents, v. K. B. NELSON, Appellant.

[1] NEGLIGENCE — PEDESTRIAN STRUCK BY AUTOMOBILE — EVIDENCE — CONTRIBUTORY NEGLIGENCE.—In this action for damages for personal injuries suffered by a pedestrian, who was struck by defendant's automobile, while crossing a paved highway, there is no merit in defendant's contention that the evidence failed to show negligence on the part of defendant or that it showed said pedestrian to have been guilty of contributory negligence.

[2] ID. — DUTY OF DRIVER OF AUTOMOBILE TO SEE PERSONS IN FRONT OF MACHINE.—It is the duty of a driver of an automobile, where

the view is unobstructed, to see persons on the road in front of the machine.

[3] ID.—PEDESTRIANS AND DRIVERS OF VEHICLES—RECIPROCAL RIGHTS AND DUTIES—CARE.—Foot-passengers and those driving vehicles have equal rights in the public highway and both are required to exercise that degree of care and prudence which the case demands. The duty cast upon both pedestrian and driver of a vehicle is reciprocal and equal, and neither of them has a right superior to the other.

[4] ID.—INSURANCE—INTERROGATION OF JURORS—STATEMENT IN ADDRESS TO JURY—ABSENCE OF PREJUDICE—INSTRUCTIONS.—In such action, the act of plaintiff's counsel in interrogating certain prospective jurors concerning their membership in an automobile club which was claimed to be the insurance carrier of defendant, and in stating in his opening address to the jury that "this case looks like it is more the case of the Automobile Club of Southern California than it is the defendant's," was not prejudicial to the defendant, where the trial court instructed the jury to disregard the incidents, and ·where, too, the fact of defendant's insurance was a matter properly before the jury.

[5] ID.—INSURANCE—EVIDENCE—JURIES AND JURORS.—While evidence that a defendant in an action for damages is insured is inadmissible and it is improper for counsel to endeavor to get such a fact before the jury by questions designed solely for that purpose, questions asked a prospective juror for the purpose of ascertaining whether or not he was a member of an automobile club which was the insurance carrier have been held to be proper.

[6] ID.—PEDESTRIANS AND DRIVERS OF VEHICLES—RIGHTS AND DUTIES—INSTRUCTIONS.—In such action, language in given instructions relating to the relative rights and duties of drivers of vehicles and of pedestrians upon the public highway, that an operator of an automobile must, in order to avoid a charge of negligence, *keep a proper lookout* for persons on the highway; that, although traveling at a lawful rate of speed, he *still remains bound to anticipate* that he may meet persons at any point on the highway; and that *whether he has taken the proper care depends upon all the circumstances of the case* did not constitute reversible error, as the employment of the word "proper" to indicate the care required of defendant means only the exercise of that degree° of care which a prudent man should use under like circumstances, which is the degree of care which the law imposes, and the use of the phrases "bound to anticipate" and "whether he has taken

3.   See 3 Cal. Jur. 871.
4.   See 3 Cal. Jur. 939.
6.   See 2 R. C. L. 1184.

the proper care depends upon all the circumstances of the case" does not have the effect, as claimed by defendant, of enlarging the degree of care required of defendant.

[7] ID.—INSTRUCTIONS.—Where a trial court has properly charged a jury with reference to the relative rights and duties of drivers of vehicles and of pedestrians upon a public highway, a subsequent charge to find for one or the other if proper care had not been exercised is not prejudicially erroneous.

[8] ID.—JURIES AND JURORS—PRESUMPTIONS.—Where a court has used words or phrases in their customary and conventional sense, no complaint can be made and especially where other instructions fully advise the jury just what is meant; the jury are presumed to possess ordinary intelligence and to understand the meaning and use of words in their common and ordinary application.

---

(1) 42 **C. J.**, p. 1233, n. 27, p. 1236, n. 33, p. 1238, n. 49.   (2) 42 **C. J.**, p. 911, n. 26.   (3) 42 **C. J.**, p. 1031, n. 6, p. 1032, n. 8, p. 1134, n. 46.   (4) 4 **C. J.**, p. 952, n. 78, p. 957, n. 66; 38 **Cyc.**, p. 1498, n. 21. (5) 35 **C. J.**, p. 394, n. 34; 36 **C. J.**, p. 1128, n. 76.   (6) 42 **C. J.**, p. 879, n. 76, p. 1032, n. 19, p. 1275, n. 96, 98.   (7) 42 **C. J.**, p. 1274, n. 89; 38 **Cyc.**, p. 1778, n. 73, p. 1779, n. 75.   (8) 4 **C. J.**, p. 771, n. 75; 38 **Cyc.**, p. 1598, n. 18 New.

APPEAL from a judgment of the Superior Court of San Luis Obispo County. T. A. Norton, Judge. Affirmed.

The facts are stated in the opinion of the court.

Culver & Nourse and Paul Nourse for Appellant.

Albert Nelson for Respondents.

TYLER, P. J.—Action to recover damages for personal injuries sustained by plaintiffs through the alleged negligence of defendant in the operation of an automobile. Defendant denied any negligence on his part and as a separate defense pleaded contributory negligence on the part of plaintiff. Mary E. Nichols. Trial was had by jury. Plaintiffs recovered judgment for the sum of $8,000, together with costs amounting to the further sum of $343.45. Various grounds are urged for a reversal of the judgment. It is first claimed that the verdict is unsupported by the evidence in that it fails to show negligence on the part of the defendant, but, on the contrary, shows without conflict that plaintiff Mary E. Nichols was guilty of negligence approxi-

mately contributing to the injuries complained of. The accident occurred upon the state highway within the limits of the city of San Luis Obispo on what is known as Monterey Road as it runs north from the said city at a point between Toro Street at the south end of the block and Essex Street at the north end thereof. There is evidence to show that plaintiff Mary E. Nichols resided with her husband on the east side of Monterey Road in the upper floor of a building located about in the middle of the block. On the day of the accident she visited a neighbor who lived on the opposite side of the road to the north at the corner of Essex Street. She left her neighbor's residence to return to her home, walking southerly along the sidewalk on the westerly side of Monterey Road. The highway at this point is approximately seventy feet in width, and in its center there is a paved strip some eighteen feet wide, the rest of the road consisting of a dirt pavement. Along the westerly side of the road and next to the curb line there is a drainage ditch which at the point about opposite plaintiff's residence is crossed by a private bridge erected by one Gist to enable him to drive his automobile on to his property from the highway. Sidewalks were maintained on the west side of Monterey Road and most of the people in the neighborhood for this reason used this side of the street in traveling along the road, and when they had occasion to visit the premises occupied by plaintiff and others on the east side they usually made use of the Gist bridge to pass over the drainage ditch. As the plaintiff approached this bridge she proceeded to cross it to reach her home. At this time there was parked at the end of the bridge a Ford sedan headed in a southerly direction. She stepped around the machine into the dirt portion of the highway and looked up and down the road in both directions. She observed an automobile approaching from the north and she also observed defendant's automobile approaching from the south at the intersection of Toro and Monterey Road, a distance of over two hundred feet. She waited for the automobile approaching from the north to pass, and, again looking up and down the road and still observing defendant's car at about the point named, she proceeded to cross the paved portion of the highway in a slightly diagonal direction so as to reach the entrance leading into her apartment. When she reached a

80 Cal. App.—38

point at almost the easterly edge of the pavement, she was struck by the right front side of the defendant's car and thrown to the pavement, receiving serious and permanent injuries. She was removed to her home and subsequently to a hospital, where she remained some eight weeks. Her injuries consisted of a fracture of the left hip, contusions on her right shoulder and right ankle and other bruises. The injuries resulted in the shortening of one of her limbs about four inches, and there is medical testimony to show that in all probability she will never be able to walk again without crutches. In addition thereto it appears that plaintiff has suffered and continues to suffer great pain. At the time of the accident defendant was accompanied by his sister-in-law. It was raining and she from time to time operated a windshield wiper attached to the machine in order that defendant's vision of the road might not be obscured. At about the time plaintiff was struck down, defendant admitted to her son that he had not seen his mother and that he was to blame for the accident. This fact was not disputed at the trial. He agreed to take care of all the expenses and volunteered the information that he was insured in the Automobile Club of Southern California and would make a report to the insurance carrier immediately. The speed of the automobile that defendant was driving was variously estimated at from twelve to twenty-five miles an hour at about the time of the accident, defendant testifying that he was traveling twelve miles an hour. [1] It is clearly apparent from the facts as above recited that there is no merit in defendant's contention that the evidence fails to show negligence on the part of defendant or that it shows plaintiff Mary E. Nichols to have been guilty of contributory negligence. On the contrary, it clearly shows that plaintiff was in no manner negligent and that defendant could have avoided the accident had he been exercising the degree of care required of him in operating his automobile. Conceding defendant to have been traveling at the rate he testified to, he had ample time to avoid striking plaintiff. He could have stopped or altered his course. Aside from the testimony of the plaintiff as to the distance of defendant's machine from the point of the accident when she proceeded to cross the pavement, one of defendant's own witnesses testified that his machine was fifty or sixty feet down the road at the time plaintiff stepped on the concrete portion of the

highway. There is evidence to show that at this time defendant's view was in no manner obstructed. Whether his failure to observe plaintiff was due to the moisture on his windshield, or from other causes, is a matter of no consequence so far as plaintiff is concerned. **[2]** It is the duty of a driver of an automobile, where the view is unobstructed, to see persons on the road in front of the machine (*Warner v. Bertholf,* 40 Cal. App. 776 [181 Pac. 808]). Plaintiff was where she had a right to be and there is evidence to show that she was exercising all the care required of her in watching for the approach of vehicles while she was crossing the highway. **[3]** Foot-passengers and those driving vehicles have equal rights in the public highway and both are required to exercise that degree of care and prudence which the case demands. The duty cast upon both pedestrian and driver of a vehicle is reciprocal and equal, and neither of them has a right superior to the other. (*Mayer v. Anderson,* 36 Cal. App. 740 [173 Pac. 174].)

We conclude, therefore, upon this question that there is ample evidence in the record to show negligence on the part of the defendant. **[4]** Appellant next complains of the action of counsel for plaintiff in interrogating certain prospective jurors concerning their membership in the Automobile Club of Southern California. In his opening address to the jury counsel for plaintiff again referred to the matter by making the statement that "this case looks like it is more the case of the Automobile Club of Southern California than it is the defendant's." These acts were assigned as error and counsel for appellant in both instances asked that the jury be dismissed and the case continued until a new jury could be drawn. The court denied the motion and instructed the jury to disregard the statements. It is here claimed that there is a close question as to the negligence of the defendant, for which reason the conduct of plaintiffs' counsel resulted prejudicially to the defendant. Aside from the fact that we do not think the case presents any close question with reference to defendant's negligence, we are of the opinion that the claimed error did not affect the substantial rights of the defendant. **[5]** While it is true that evidence that a defendant in an action for damages is insured against loss is inadmissible and it is improper for counsel to endeavor to get such a fact before the jury by questions designed solely

for that purpose, under the facts as here presented it cannot be said to constitute error. The question asked the juror was for the purpose of ascertaining whether or not he was a member of the automobile club which was the insurance carrier. Such questions have been held to be proper. (*Williamson* v. *Hardy*, 47 Cal. App. 377 [190 Pac. 646]; *Baldarachi* v. *Leach*, 44 Cal. App. 603 [186 Pac. 1060]; *Arnold* v. *California Portland Cement Co.*, 41 Cal. App. 420 [183 Pac. 171].)

Even conceding it to have been improper, it was not prejudicial where, as here, the court instructed the jurors to disregard it. Then, too, the fact of defendant's insurance was a matter properly before the jury. It appeared in evidence that defendant had made the admission on the occasion when he acknowledged his responsibility for the accident. It also appeared that the club paid the expenses of certain witnesses and that it caused tests to be made concerning defendant's ability to stop his machine within certain distances. Numerous other acts on its part were in evidence showing conclusively that the club was very much concerned with the outcome of the litigation. Under such circumstances the statement made by counsel cannot be said to have been prejudicial. Conceding it to have been ill-advised, it was a mere reference to a proven fact in the case. There is no merit in the objection.

[6] Appellant further complains of the giving of certain instructions relating to the relative rights and duties of the drivers of vehicles and of pedestrians upon the public highway. At the request of plaintiff the court instructed the jury as follows: "I charge you that even though the rate of speed at which an automobile is being operated does not exceed the limit of speed fixed by law, such rate of speed may, nevertheless, be held under some circumstances, to be negligent. That is to say, the operator of an automobile is not necessarily exempt from liability for injury to other persons occurring in a public street by showing simply at the time of the accident- he was running at a rate of speed allowed by law. He *still remains bound to anticipate* that he may meet persons at any point of the street, and he must, in order to avoid a charge of negligence *keep a proper lookout* for them and keep his machine under such control as will enable him to avoid collision with other persons using proper

care and caution, and if the situation requires it, he must slow up and stop.''

The jury was further instructed that ''One using a public street is charged with the duty of observing approaching vehicles. This rule is qualified and explained, however, by the equally general rule that, except in the cases where the law fixes a standard of care, negligence is always relative and to be determined in view of all the circumstances of the particular case. The driver of a vehicle should proceed carefully and be on the alert lest he collide with others. It is the duty of a driver of a vehicle who is suddenly confronted with danger, though arising from the fault of another, to seek to avoid a collision. *Whether he has taken the proper care depends upon all the circumstances of the case.* Every person using the public streets and highways for the purpose for which they are established and maintained has the right to assume that other persons using such streets and highways for the same purpose will, when so using them, obey the law regulating their use by pedestrians and drivers of vehicles of any kind.''

It is contended under the first instruction quoted above the court placed a higher duty on the defendant than that of using ordinary care; that under the instruction given the jury was in effect told that in addition to the use of ordinary care the defendant was *''bound to anticipate''* that he might meet other persons on the highway, and, further, that he must, in order to avoid a charge of negligence, not only use reasonable care in keeping a lookout, but must keep a *proper* lookout, which implies no error, irrespective of whether a pedestrian was seen or not. That under the second instruction the use of the phrase ''whether he has taken the proper course depends upon all the circumstances of the case'' is misleading, as it implies that the driver of a motor vehicle, when suddenly confronted with danger, is bound to use a course free from error or the jury is at liberty to find against him. We do not think there is any merit in these objections. With reference to the first instruction, the employment of the word ''proper'' to indicate the care required of defendant means only the exercise of that degree of care which a prudent man should use under like circumstances, which is the degree of care which the law imposes. (*Ramsbottom* v. *Atlantic*

*Coast Line R. Co.,* 138 N. C. 38 [50 S. E. 448]; *Missouri, K. & T. R. Co.* v. *Flood,* 35 Tex. Civ. App. 197 [79 S. W. 1106].) Nor did the use of the phrase "bound to antici-pate" have the effect, as claimed, of enlarging the degree of care required of defendant. The same may be said of the phrase "whether he has taken the proper course depends upon all the circumstances of the case." The court fully and fairly in numerous instructions advised the jury con-cerning the relative rights and duties of pedestrians and the drivers of vehicles upon the public highway. The jury were instructed that one walking or driving in a public street is bound to use reasonable care to look and listen as she or he goes, so as to be able to avoid collision with others exercising the common privilege of using the street. That this duty rests alike upon every person upon the street, and each person in crossing a street must use reasonable care for his or her own protection as well as for the protection of others upon the highway. That the reasonable care which is re-quired must be measured by all the surrounding circum-stances and conditions. That the rights and obligations of all persons using a public street are reciprocal, and each may rightfully expect that the other will, at the proper time, dis-charge his proper duty toward others, but that he cannot rely wholly on the care of others, nor on that account neglect to use the precaution which the particular situation demands of him or her. [7] Where a court has thus properly charged a jury a subsequent charge to find for one or the other if proper care had not been exercised is not preju-dicially erroneous. (*St. Louis S. W. R.* v. *Parks,* 40 Tex. Civ. App. 480 [90 S. W. 343].) [8] Where a court has used words or phrases in their customary and conventional sense, no complaint can be made and especially where other instruc-tions fully advise the jury just what is meant. The jury are presumed to possess ordinary intelligence and to understand the meaning and use of words in their common and ordinary application. (*Huston* v. *Southern Cal. Ry.,* 150 Cal. 701 [89 Pac. 1093].) In general, however, it is well for trial courts to adhere strictly to the use of well-established words. Departure from the beaten paths always leads to doubt and uncertainty and impose useless work upon appellate courts. We do not deem further discussion of the instructions or the case necessary. The evidence fully supports the ver-

dict and no claim is made that the judgment is excessive and there has been no miscarriage of justice.

The judgment is affirmed.

Knight, J., and Campbell, J., *pro tem.*, concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 7, 1927.