[L. A. No. 17862.   In Bank.—Aug. 20, 1941.]

LARRY WILL et al., Appellants, v. SOUTHERN PACIFIC COMPANY (a Corporation), Respondent.

Frank J. Barry, Leonard W. Hartigan and Patrick Henry Ford for Appellants.

W. I. Gilbert, Frank Karr, C. W. Cornell and O. O. Collins for Respondent.

Robert Brennan, M. W. Reed, E. T. Lucey, Leo E. Sievert, H. K. Lockwood, William F. Brooks, E. E. Bennett, Edward C. Renwick and Malcolm Davis as *Amici Curiae* on behalf of Respondent.

EDMONDS, J.—After a jury had returned a verdict against the respondent railroad company awarding damages for the death of Roy Clayton Will, which occurred in a crossing accident, the trial judge granted a motion for a new trial. The appeal is from that order.

The complaint alleged that the engineer and fireman of the train, who were joined as defendants, negligently drove the engine and cars with great speed and rapidity to and across Chevy Chase Drive without ringing any bell or blowing any whistle. The appellants also charged Southern Pacific Company with negligence in maintaining a crossing having signaling devices that did not operate and an embankment which obstructed the view of an approaching train. The jury's verdict was in favor of the employees but against the railroad company.

The respondent's motion for a new trial was made upon the grounds that the verdict was reached by resort to lot; that one instruction was prejudicially erroneous; that the verdict was inconsistent in that by it the jury held the railroad liable but exonerated its employees; and that the verdict was against both the law and the evidence.  ▮  The motion also specified that the evidence is insufficient to support the verdict, but the form of the order requires this court to presume that it was not based upon that ground.  (*Phillips* v. *Powell*, 210 Cal. 39 [290 Pac. 441] ; Code Civ. Proc., sec. 657.)

The appellants assert that none of these points were well taken.  In support of the order, the railroad company says that the verdict is against the law because, being in favor of the trainmen it amounts to a conclusive finding that the bell sounded, the whistle blew and the speed was not excessive; in other words, that the train was operated with due care.  It argues that on the other issue, which concerns the maintenance of the crossing, no negligence was proved.  The company urges further that the evidence offered by the appellants conclusively proves Will to have been guilty of contributory negligence as a matter of law.  The respondent also contends that the trial court's order should be sustained because the court charged the jury that the railroad company was "bound to keep [the signaling device] in proper condition and repair."

The accident occurred on tracks which run in a general northerly and southerly direction.  The automobile driven by Will approached these tracks from the east on Chevy Chase Drive, a street which intersected them at a right angle.  The train was traveling south on a track which was 67 feet from the easterly line of the railroad right of way.

Evidence introduced by the appellants shows that, at the time of the accident, there was a building on the northeast corner of the street and the property of the railroad.  Commencing near this building and extending to a point 15 feet east of the first rail on the easterly tracks was a dirt embankment five feet in height and about 27 feet wide.  There was a railroad crossing sign more than 100 feet from the right of way, and, nearer the tracks, a combination cross-arm and wig-wag sign bearing the designation "Railroad Crossing." There was also a sign marked "Slow" in large letters at the line of the railroad right of way.

The accident occurred at 7:30 o'clock in the morning. There is undisputed evidence that, as the automobile approached the crossing, it was traveling at a speed of from 15 to 25 miles per hour; that the train was traveling from 45 to 60 miles per hour; and that the wig-wag signal was not working. Will was familiar with the crossing, as he had driven over it every day for three months prior to the accident.

There is some conflict in the evidence concerning the extent to which the building and embankment obstructed the vision of one approaching the crossing from the east. However, all of the witnesses called by the appellants agreed that, at a point 44 feet east of the track on which the collision occurred, one could see to the north for a considerable distance. The estimates of this distance ranged from 500 feet to a mile.

The automobile of Will was one of three or four which were proceeding in a westerly direction along Chevy Chase Drive. At least one automobile was coming from the west. Earl Nevins, who testified on behalf of the appellants, said that as he was driving westerly toward the crossing, he saw the automobile driven by Will in his rear view mirror. He slowed down to about eight miles per hour and the automobile of Will passed him when he stopped about 14 feet from the easterly track, which was about 35 feet from that used by southbound trains. At that time Nevin observed and heard the train approaching about 200 feet away. According to his testimony, Will was driving at a speed which he estimated at from 15 to 20 miles per hour, which continued until the collision occurred.

By its verdict, the jury impliedly found that the railroad employees were not guilty of negligence and that the train, as it approached the crossing, was being operated with due care. More specifically, the verdict amounts to a finding that the speed at which the train was traveling was not excessive and that the proper warnings of its approach had been given. ▮ And as the cause of action against the railroad on account of the negligent operation of the train is based upon the doctrine of *respondeat superior,* the verdict exonerating the engineer and fireman necessarily absolved the company in so far as any negligence in the operation of the train is concerned. ▮ The rule in this regard is that where liability is sought to be imposed under the doctrine of *respondeat superior* because of an act or omission not participated in or directed by the principal, a judgment in favor of the agent *ex*

*propria vigore* relieves the principal of responsibility. (*Bradley* v. *Rosenthal,* 154 Cal. 420 [97 Pac. 875, 129 Am. St. Rep. 171]; *Fimple* v. *Southern Pac. Co.,* 38 Cal. App. 727 [177 Pac. 871]; *Thompson* v. *Southern Pac. Co.,* 31 Cal. App. 567 [161 Pac. 21].)

The appellants endeavor to avoid this effect of the verdict because they are seeking a recovery against the railroad company not only under the doctrine of *respondeat superior* but also because of an alleged violation of an independent duty. Relying upon the rule applied in *Barsoom* v. *City of Reedley,* 38 Cal. App. (2d) 413 [101 Pac. (2d) 743], and *Waltemath* v. *Western States Realty Co.,* 9 Cal. App. (2d) 583 [50 Pac. (2d) 451], they claim that the verdict does not exonerate the railroad company under the second charge of the complaint.

However, although a railroad is required to give proper warnings at crossings and to run its trains at safe speeds, a verdict which impliedly finds that a train was traveling at a proper speed upon warnings of its approach discharges the company from any liability based upon asserted negligence in allowing an embankment on its right of way which, to some extent, obstructed a clear view of its tracks in one direction. The situation is practically the same as in the case of *Thompson* v. *Southern Pac. Co., supra,* where the court ruled adversely upon the plaintiff's contention that the railroad participated in the accident because it permitted weeds to grow which obscured a view of the track. Assuming that he was exercising due care, said the court, ''it is quite clear from the record that he would have been apprised of the danger if the bell had been properly rung and the whistle sounded,'' and it held that the verdict in favor of those in charge of the train exonerated the railroad company.

The railroad company was also charged with negligence because of its asserted failure to maintain the automatic signals at the crossing in working order. This is an omission which is not directly connected with the operation of the train, in so far as the duty of the railroad to give warning of its approach is concerned, and the verdict of the jury exonerating the trainmen is not determinative of the issue concerning such negligence. When a railroad has undertaken to warn travelers of the approach of its trains by means of a crossing device, such as an automatic signal, upon which the public is encouraged to rely, failure to use due care in the maintenance of this device may constitute negligence regard-

less of the fact that it may have given other warning of the train's approach. ██ In the absence of a specification that the motion for a new trial was granted upon the ground that the evidence is insufficient to support the verdict, it must be assumed that the railroad company was negligent in this regard.

In arguing that the verdict is not against law, the appellants concede that if the uncontradicted evidence shows facts proving that Will was guilty of contributory negligence as a matter of law, the order granting the motion for a new trial may be sustained although the court did not specify that it was made upon the ground of the insufficiency of the evidence. (*Biaggi* v. *Ramont,* 189 Cal. 675 [209 Pac. 892].) However, they urge that, upon the record in this case, the issue of contributory negligence was one of fact determinable by the jury. The railroad company contends that the evidence offered by the appellants concerning the happening of the accident compels a determination of the issue as one of law.

██ The tracks of a steam railroad are a sign of danger, and one intending to cross them must avail himself of every opportunity to look and listen. The degree of care to be exercised is dependent upon the circumstances in the particular case. If there are obstructions to the view, one is required to take a greater amount of care. (*Herbert* v. *Southern Pac. Co.,* 121 Cal. 227 [53 Pac. 651].) However, the same *quantum* of care is not required of a traveler approaching a railroad crossing at which a bell or signal has been erected to warn him of danger. (*Vaca* v. *Southern Pac. Co.,* 91 Cal. App. 470 [267 Pac. 346]; *Gregg* v. *Western Pac. R. R. Co., supra; Crawford* v. *Southern Pac. Co.,* 3 Cal. (2d) 427 [45 Pac. (2d) 183].) A railroad company will not be permitted to encourage persons to relax their vigil concerning the dangers that lurk in railroad crossings by assuring them, through the erection of safety devices, that the danger has been removed or minimized, and, at the same time, to hold them to the same degree of care as would be required if those devices had not been provided. (*Gregg* v. *Western Pac. R. R. Co., supra; Marini* v. *Southern Pac. Co.,* 201 Cal. 392 [257 Pac. 74].)

This does not mean that a person approaching a guarded crossing may blindly rely upon the absence of warning by a watchman, or the silence of an automatic signal, and proceed

without further regard for his own safety. Knowing that he is approaching a point of danger he must still use reasonable care in looking and listening for any approaching trains. Failure to do so constitutes contributory negligence, as a driver may not cross tracks in reliance upon the safety appliances installed by the railroad with complete disregard for his own safety and recover damages for injuries sustained by reason of his own failure to use reasonable care. (*Crawford* v. *Southern Pac. Co., supra.*)

■ The evidence offered by the appellants concerning Will's actions at the time of the accident is as follows: It was about 7:30 in the morning, and although visibility was impaired somewhat by a light rain or mist, a train could be seen clearly from 500 to 800 feet away. As Will approached the crossing, he was driving at a speed of from 15 to 25 miles per hour. He was entirely familiar with this crossing, having driven over it daily for three months. Passing another automobile which was slowing down, he continued to the point of impact at the same rate of speed. Crossing signs were in place, one visible about 500 feet from the tracks. The automatic signal was not working, but at a point 44 feet from the place where the collision occurred, there was unobstructed vision to the north for a distance of from 500 feet to a mile.

The evidence also shows that there were other automobiles moving in the same direction Will was traveling and also coming from the west. His vision to the north was completely obstructed by the buildings on his right until he reached a point about 70 feet from the southbound track. Because of the embankment extending from the building, it was not until he was 44 feet from the southbound track that his view of the track was unimpaired. At a speed of 20 miles per hour, an automobile travels about 30 feet per second, so that he had a period only slightly in excess of two seconds from the time he passed the building within which to look to the north. Under these circumstances, it cannot be said, as a matter of law, that he did not use reasonable care; the question of negligence was one of fact for the jury, and its verdict is fully supported by the evidence.

■ The railroad company also contends, in support of the order for a new trial, that the following instruction, given at the request of the jury, created a conflict and was prejudicially erroneous: "In order to charge a railroad company

with negligence for a defect in a signalling device at a crossing which it is bound to keep in proper condition and repair, it must be shown to you that the railroad company had notice of the defect and that it failed for a reasonable time thereafter to repair such signalling device. . . . " In using the word "bound," it declares, the trial judge told the jury that the railroad is an insurer of the operation of a safety device.

This is too strict a construction of the language used, particularly when the other instructions which were given are read with it as the complete charge to the jury. (*Nichols* v. *Nelson,* 80 Cal. App. 590 [252 Pac. 739] ; *Stewart* v. *Morris,* 96 Fed. 703 [37 C. C. A. 562].) By the challenged instruction, the jury was told that the requirement of "proper condition and repair" is laid upon a railroad company after actual or constructive notice of a failure of the device to operate. In eight other instructions, six of which were offered by the railroad company, its duty was declared to be that of reasonable care, which was carefully defined. Jurors are presumed to be persons of ordinary intelligence, and. considering all the instructions together, could not have understood them to mean that the railroad is an insurer of the perfect operation of its signaling devices. Moreover, in the latter portion of the instruction quoted, it was said that the railroad company might be held guilty of negligence only after "notice of the defect." If it were an insurer, its duty would not depend upon notice; it would be "bound" to keep its equipment in perfect operating condition regardless of notice.

The word "proper," when used in an instruction, has been held to have substantially the same meaning as "reasonable precaution" or "due care," particularly when the obligation of the defendant is stated in other instructions. (*Cassinelli* v. *Bennen,* 110 Cal. App. 722 [294 Pac. 748] ; *Nichols* v. *Nelson, supra; Burk* v. *Extrafine Bread Bakery,* 208 Cal. 105 [280 Pac. 522].) For example, in the Nichols case, the court said that the use of the word "proper" to state the care required of a defendant, "means only the exercise of that degree of care which a prudent man should use under like circumstances, which is the degree of care which the law imposes." Nor does it assume that any defective condition existed at the time of the accident.

Respondent relies upon *Hesler* v. *California Hospital Co.,* 178 Cal. 764 [174 Pac. 654], in which it was held error to

charge the jury that a physician must give "proper instructions" to his patient how to take care of himself. This instruction, the court said, implied that no error could be committed; that a physician is under the duty of obtaining an approximately perfect result, and guarantees his treatment is of that quality. That was a malpractice case in which the jury was also instructed that the physician was "bound to use a degree of diligence, attention and skill adequate to the performance of the undertaking," and the decision rests upon principles different from those which apply to the controversy now before the court. (*Cassinelli* v. *Bennen, supra.*)

Other points raised by the respondent based upon the instructions have been carefully considered. The answer to them is that the charge to the jury, read as a whole, fully and fairly stated the duties of the respective parties and did not invade the province of the trier of fact by assuming that any particular conditions were present at the time of the accident.

■ Finally, the respondent seeks to justify the order for a new trial upon the ground that the verdict was arrived at by chance. In support of its motion for a new trial, it presented an affidavit of a juror who stated that, in considering the amount which should be awarded to the plaintiffs, the different amounts voted by his fellow members were added up and divided by twelve at least three times; that the final average computed amounted to $26,000; and that thereafter the sum of $25,000 was fixed by the vote of the majority as the amount of the damages to be awarded the plaintiffs. It does not appear by the affidavit that before these computations were made the jurors had agreed to adopt an average as their verdict. On the contrary, the affidavit shows affirmatively that the jurors voted on the sum of $25,000 as the amount of the damages.

A counter-affidavit is to substantially the same effect except that it shows, in more detail, the consideration of the amount of the award by the jurors after the computations were made. According to this affidavit, after the jurors found that $26,000 was the average amount which was being voted as damages, there was considerable discussion. Some of them thought that it was too much and others that it was too little. Finally nine of the jurors agreed to $25,000, the other three being in favor of a verdict for the railroad company.

When jurors agree to vote for a verdict in an amount to be calculated by an averaging of the sums being voted by some

or all of them, it constitutes one arrived at by chance which should be set aside. (*Dixon* v. *Pluns,* 98 Cal. 384 [33 Pac. 268, 35 Am. St. Rep. 180, 20 L. R. A. 698]; *McDonnell* v. *Pescadero & S. M. Stage Co.,* 120 Cal. 476 [52 Pac. 725].) But it is not improper for jurors to calculate an average amount as a basis for discussion if there is a later consideration of the amount and a vote upon it, even if they agree upon that amount. (*Griffith* v. *Oak Ridge Oil Co.,* 190 Cal. 389 [212 Pac. 913]; *McDonnell* v. *Pescadero Stage Co., supra; Ham* v. *County of Los Angeles,* 46 Cal. App. 148 [189 Pac. 462].)

The order granting a new trial is reversed.

Gibson, C. J., Curtis, J., Traynor, J., and Pullen, J., *pro tem.,* concurred.

Respondent's petition for a rehearing was denied September 13, 1941. Carter, J., did not participate therein.