[Civ. No. 16526. First Dist., Div. One. Feb. 27, 1956.]

BEVERLY CANTOR, Appellant, v. COUNTY OF SANTA CLARA et al., Respondents.

James W. Harvey and Dorothy E. Handy for Appellant.

O. Vincent Bruno for Respondents.

BRAY, J.—Plaintiff appeals from an order granting non-suit in favor of defendant Robert B. Chandler, and from the judgment in favor of defendant Santa Clara County.[1]

### QUESTIONS PRESENTED

Judgment for county—1. Was the county negligent as a matter of law? 2. Did the court err in (a) instructing on contributory negligence; (b) failing to instruct on duty to post signs?

Nonsuit—1. Was there any evidence that funds were available to defendant road commissioner? 2. Failure to prove presentation of claim. 3. Was the granting of the nonsuit error without prejudice?

### FACTS

May 27, 1951, plaintiff, in the company of his lady friend (now his wife), her daughter, and his son, were enjoying a barbecue picnic at Stevens Creek Lodge picnic grounds in Santa Clara County. While there, they were invited by Arthur Natusch to visit him at his nearby cabin, situated on the Stevens Creek Canyon Road[2] about "two good city blocks" west of the lodge. Canyon Road is a county road 9.6 miles long. From the main highway to the lodge is approximately 6 miles. The road is two lanes, macadamized. It continues from the lodge for approximately 3½ miles where it dead ends in the canyon. Shortly after leaving the lodge, it becomes a narrow one-way twisting road with no lane markings. The surface had many imperfections, such as depressions, washouts and chuckholes. In the one-lane areas the width was 10-12 feet. The scene of the accident is about 200 feet beyond the lodge. There the road reaches a crest with a "very extreme left turn." At this point a motorist can see only the top of the car's hood, and not the road ahead. The road is only 9 feet wide, with a high cliff adjoining it on the left, and on the right a ravine with a creek 20 feet below. Plaintiff, driving with his now wife towards the Natusch cabin, approached the last mentioned

---

[1] Plaintiff also attempts to appeal from the order denying motion for new trial. As such order is not appealable it is hereby dismissed.

[2] Hereafter referred to as Canyon Road.

point, his car about a foot and a half or two feet from the left edge of the road. As he was attempting to make the turn at the crest "The steering wheel was wrenched from my hand and the car fell away on the right side and over we went." The car dropped to the creek below, and plaintiff received severe injuries, for which he sought damages from the county and defendant Chandler, its road commissioner. Testimony of witnesses familiar with the road showed that the chuckholes and depressions in the road had existed for a considerable period of time, and that constant complaints thereof had been made to the county authorities for a period between two and three years. At the point in question there were two holes in the road, one being a large crescent-shaped depression or washout on the right side caused by the bank eroding. The other was a small hole ahead of it. Two cars had previously gone over the bank at the same location, one just a week before plaintiff's accident. There were no signs of warning anywhere on the road, although since the accident a "Narrow Road" sign had been erected. The day following plaintiff's accident the road was graded and a small embankment built up on the edge. Both in 1949 and 1950 one of the users of the road had complained to defendant Chandler about the condition of the road. Chandler informed him there were no funds to repair it.

There was testimony that work was done yearly upon the road, including the filling of the depression at the turn above mentioned, but that children going to a swimming hole below would slide down the outside edge of the road, causing a new depression. There was some conflict as to the use of the road, plaintiff's witnesses testifying to considerable year-around use, defendants' to a use of it by about 27 cars daily, principally in the summertime.

### County Judgment

(1) *Negligence.*

Plaintiff contends that the evidence shows that as a matter of law defendant county was negligent and plaintiff was not negligent.

Plaintiff's cause of action against the county is based upon section 53051, Government Code, which provides liability for injuries resulting from a dangerous or defective condition of public property if the legislative body, board or person authorized to remedy the condition (a) had knowledge or notice of such condition and (b) for a reasonable time there-

after failed to remedy the condition or to take action reasonably necessary to protect the public against the condition. As we hereafter point out in discussing the evidence as against defendant Chandler, there was evidence to support a finding that all the elements above mentioned existed. However, the evidence did not compel such finding. As to the dangerous condition of the road, there was evidence that this was a twisting, turning, narrow, typical mountain road, and that the crescent-shaped depression which plaintiff claimed caused his injury was at the very edge of the road and outside the traveled portion thereof, and that although there had been two accidents at this spot, a school bus daily, many passenger vehicles, trucks, bulldozers and trailers had used the road without mishap.

On the question of notice the jury could have determined that while defendant county had notice of the condition of the road, that condition was not such as necessarily to put the county on notice that the condition was a dangerous one. (See *Howard* v. *City of Fresno,* 22 Cal.App.2d 41, 45 [70 P.2d 502].)

There was evidence (introduced after the granting of the nonsuit in favor of Chandler) that the maintenance of the road was extremely difficult when balancing the necessities of other county roads highly traveled against those of this road as to which there was evidence that it was traveled very little. Thus, the evidence concerning the county's alleged negligence was not such as to enable a court to hold that as a matter of law the county was negligent, but was such that a finding by the jury either way, would be supported.

(2) *Instructions.*

(a) Contributory negligence.

■ Plaintiff contends that there was no evidence to support a finding of contributory negligence and hence the court should not have instructed on that subject. However, there was evidence from which the jury could have found plaintiff to be contributively negligent, although a finding the other way would likewise be supported. Leaving aside the question of whether the jury could not have disbelieved plaintiff's version of the accident, there was evidence that while plaintiff had only been over the road beyond the lodge twice before the accident, he was thoroughly familiar with the type of road it was and knew it contained many chuckholes and depressions; that he was traveling 15 miles per hour at the point where the road was narrowed to 9 feet with a sharp

turn at the crest of an ascent and with a high cliff on one side and a steep declivity on the other, and where he could not see the road; that the depression which caused the accident was off the traveled portion of the highway. The foregoing evidence was such that the jury could have found (and undoubtedly did find) plaintiff contributively negligent. Therefore instructions on contributory negligence were properly given.

(b) Duty to post signs.

■ Plaintiff offered and the court refused two instructions on this subject. The first quoted section 465, Vehicle Code: " '. . . Local authorities in their respective jurisdictions shall place and maintain or cause to be placed and maintained such traffic signs . . . upon streets and highways as may be necessary to indicate and to carry out the provisions of this Code or local traffic ordinances or to regulate, warn or guide traffic.' " The second instruction was to the effect that where a county has notice of a defective or dangerous condition of its streets, it is its duty, if it does not correct such condition, to post signs along said street to warn persons using it of the dangerous or defective condition existing thereon. This instruction is based on the requirement in section 53051, Government Code, "or to take action reasonably necessary to protect the public against the condition," on section 465, Vehicle Code, *supra*, and on *Rose* v. *County of Orange*, 94 Cal.App.2d 688, 691 [211 P.2d 45], holding that a county has a duty to warn if a dangerous condition exists in its streets. These were proper instructions and should have been given. Our problem is to determine whether the failure to give them was prejudicial. The court instructed practically in the language of section 53051 that after notice of a dangerous or defective condition of its road the county must remedy such condition or "take such action as was reasonably necessary to protect the public against such condition." It again referred to this requirement. Thus, the jury were twice informed that the county had a duty to either remedy the condition or protect the public from it. Obviously this would include the use of warning signs. A more important element on this question, however, is how the placing of signs would have changed plaintiff's situation. Immediately after the accident a sign "Narrow Road" was erected. Plaintiff knew and could see that it was a narrow road. Moreover, the condition as to chuckholes and depressions

and the entire situation were admittedly completely obvious to anyone driving the road and to plaintiff. Warning signs would not have added anything to plaintiff's knowledge of the road from his previous two trips over it, and particularly to what was perfectly obvious to him. The situation here comes within the rule set forth in *Electrical Products Corp.* v. *County of Tulare,* 116 Cal.App.2d 147, 153 [253 P.2d 111]: "Under some circumstances, it has been held that the physical conditions or jogs or offsets in a street may be equivalent to warning signs 'and as readily visible to the alert driver as a sign informing him of the condition, there being nothing to conceal the real condition or to deceive the operator of an approaching automobile while driving at a lawful rate of speed and with due caution.' (*Waldorf* v. *City of Alhambra,* 6 Cal.App.2d 522 [45 P.2d 207].) A duty rests on a driver to see that which is clearly visible and which would be seen by anyone exercising ordinary care." It is unreasonable to assume that the jury did not know from the instructions that if it found the other elements of the public liability statutes present it did not know that included in the requirement that the county either remedy a dangerous condition or "take such action as was reasonably necessary to protect the public against such condition" was the duty of the county to place warning signs if a dangerous condition existed and if warning signs were needed. Undoubtedly plaintiff pointed out to the jury how little such signs would cost, and the jury must have had in mind plaintiff's contention that signs should have been erected. Nevertheless the jury by a unanimous verdict found against plaintiff's contention. It would be extremely unrealistic to consider that the giving of the proposed instructions would have caused any different verdict of the jury.

## Nonsuit

### 1. *Available funds.*

The record does not disclose upon what grounds the court granted the nonsuit, nor are the proceedings on the motion for nonsuit before us. It seems to be assumed by the parties that it was on the ground that there was no evidence that the commissioner had funds available to repair the road. Chandler's liability as road commissioner depends upon proof of the five elements required by section 1953, Government Code, to hold a county officer liable for the defective or dangerous condition of county property: (1) The injury sustained must be the direct and proximate result of such dangerous or de-

fective condition. The evidence meets this requirement. (2) The officer had notice of such condition. The evidence shows such notice. (3) He had authority and it was his duty to remedy such condition at the expense of the county and that funds for such purpose were immediately available to him. The evidence discloses such authority and duty. The funds situation will be discussed later. (4) Within a reasonable time after notice of the condition and being able to remedy it he failed to do so, or take reasonable steps to give adequate warning of such condition. Except as affected by the question of funds, the evidence met this requirement. (5) The plaintiff was using the public property carefully and with due care. The evidence met this requirement.[3]

Upon this phase of the case the question is whether there was any evidence to show, as required by element (3) above, that funds were available to Chandler. There was no direct proof that Chandler had such funds. There was evidence from which a jury could have found that he had $3,000 per year for the entire road. There was also evidence that the day following the accident about 50 or 60 loads of gravel were dumped into "this wash-out." The complaints about the particular depression which caused plaintiff's accident had been made over a period of two to three years. Thus a jury could have found that Chandler had had funds from which he could have remedied the condition before the accident, which was remedied the day after the accident. Moreover, section 1953 gives an officer two alternatives where he learns of the dangerous condition of public property under his care, (1) to remedy the condition, or (2) to give adequate warning of such condition. Thus it should have been left to the jury to determine whether Chandler should have used some portion of that money for one of those alternatives. Of course, if the nonsuit had not been granted, Chandler would have had an opportunity to give any reasons he might have had why such money was not available for either alternative.

2. *Claim.*

For the first time, defendants, on this appeal, contend that the nonsuit was properly granted because of the failure

---

[3]In stating that the evidence met a particular requirement we are following the rule which requires us in determining the question of nonsuit to disregard conflicts and to accept the evidence and the reasonable inferences therefrom most favorable to plaintiff.

of plaintiff to allege and prove the service upon Chandler of the claim required by section 1981, Government Code. (Such claim was alleged as to all parties but only proved to have been served upon the county.) Plaintiff points out that defendants do not contend that such claim was not actually served upon Chandler. Plaintiff claims that had the point been raised at any time in the trial court he could easily have proved the service. While the failure to file such claim with the officer would bar recovery (see *Huffaker* v. *Decker*, 77 Cal.App.2d 383 [175 P.2d 254]), and compliance with this section cannot be waived by estoppel (see *Johnson* v. *City of Glendale*, 12 Cal.App.2d 389 [55 P.2d 580]), it would appear that under the circumstances of this case the failure to prove the filing of the claim with Chandler was not jurisdictional. Apparently all parties in the trial court, knowing that the claim had been filed with both the officer and the county, assumed that the matter of the claim was not an issue. It would be a horrible miscarriage of justice for us to support the nonsuit on a ground which was not presented to the trial court and which was groundless in fact.[4]

The motion for nonsuit was improperly granted.

3. *Error without prejudice.*

The most serious question is whether the error in granting the nonsuit is not error without prejudice due to the finding of the jury in favor of the county. ■ The exact relationship of the county and an officer sued in connection with the Public Liability Act (Gov. Code, §§ 53051, 1953, 1956, 1981, 2001, 2002) has never been defined. They are joint tort feasors in two respects: first, under the doctrine of *respondeat superior* the county is responsible for the torts of its officers in this regard occurring in the scope of their employment.[5] (See *Von Arx* v. *City of Burlingame*, 16 Cal.App.2d 29 [60 P.2d 305], holding that the liability of the sovereignty under the then section 1714¼, Civil Code (liability of owner of a public automobile) is that of a joint tort feasor with the agent under the doctrine of *respondeat superior*.) Secondly, the county had an independent duty through its other officers

---

[4]Our decision on this point is based upon the apparent acquiescence of defendants in plaintiff's statement that the claim was presented to Chandler. Moreover, in a brief filed after the first submission of this case was set aside, defendants in discussing the subject again intimated that the claim had been presented.

[5]There is no contention here that defendant Chandler was acting outside the scope of his employment and hence no common law liability for tort is claimed.

to take care of dangerous and defective conditions, even if one of its officers charged with the duty did not do so, so that it would have a liability jointly with that of the latter additional to that attributable to it under *respondeat superior*. A suit may be brought against both the county and the officer or separate suits against each. ▮ In a sense the liability of the county is broader than that of the officer for the reason that at least two requirements are necessary to make the officer liable that are not necessary to make the county liable. They are (1) proof that the officer had authority and it was his duty to remedy the condition; and (2) that funds were available to him. (To hold the county liable once notice of the condition is shown it is not necessary to prove that any particular officer had authority to repair the condition or the funds with which to do it.)

▮ In view of this broader liability of the county and of the other circumstances of the relationship, it must necessarily follow that the general rule that the release of one joint tort feasor releases the other, applies here. Especially is this so where plaintiff's entire case as to defendant Chandler was also his case as to defendant county. Here, primarily, the proof adduced by plaintiff to hold the county was the alleged negligence of defendant Chandler. If the county was found not to be negligent, both independently and under the doctrine of *respondeat superior*, necessarily the agent whose very acts were in question is released from a charge of negligence. The relationship between the county and the road commissioner as defendants in this action, over and above the alleged liability of the county due to *respondeat superior* meets all of the elements to constitute the parties joint tort feasors as defined in *Alexander* v. *Hammarberg*, 103 Cal.App.2d 872 [230 P.2d 399].

In *Will* v. *Southern Pac. Co.*, 18 Cal.2d 468 [116 P.2d 44], the reverse of the situation here occurred. There the railroad and its engineer and fireman were sued for negligence in driving its engine at a crossing. Additionally the railroad alone was charged with negligence in maintaining an embankment at the crossing which obstructed the view of an approaching train. The jury exonerated the employees, but rendered a judgment against the company. The Supreme Court held (pp. 472-473): "The rule in this regard is that where liability is sought to be imposed under the doctrine of *respondeat superior* because of an act or omission not participated in or directed by the principal, a judgment in favor of

the agent *ex propria vigore* relieves the principal of responsibility. [Citations.]

"The appellants endeavor to avoid this effect of the verdict because they are seeking a recovery against the railroad company not only under the doctrine of *respondeat superior* but also because of an alleged violation of an independent duty. . . . However, although a railroad is required to give proper warnings at crossings and to run its trains at safe speeds, a verdict which impliedly finds that a train was traveling at a proper speed upon warnings of its approach discharges the company from any liability based upon asserted negligence in allowing an embankment of its right of way which, to some extent, obstructed a clear view of its tracks in one direction." See also *Bradley* v. *Rosenthal*, 154 Cal. 420 [97 P. 875, 129 Am.St.Rep. 171], where it was charged that the employer and the employee were jointly negligent. The jury gave a verdict in favor of the employee and against the employer. The court held that a verdict exonerating the agent necessarily exonerates the employer. The converse of this rule must follow.

The very close relationship between the county and its officer in connection with actions of the kind here is shown in the following language from *Huffaker* v. *Decker, supra,* 77 Cal.App.2d at pages 388-389: "Aside from the fact that the public is interested in saving its officers and employees from the harassment of vexatious litigation, it is directly and peculiarly concerned in any action against its employees in suits against them for damages occasioned through their negligence while acting as such employees and within the scope of their employment. This is so because section 2001 of the Government Code casts the duty upon the attorney for the municipality to act as counsel in defense of such action against the employee and the fees and expenses incurred therein are a lawful charge against the municipality. Furthermore, section 1956 authorizes a municipality to insure its employees against the liability for such negligence and the premium for such insurance is therein declared to be a proper charge against the treasury of the municipality. It is thus seen that the city has a financial liability in any action brought against its employee under the above stated conditions, though perhaps the liability is not usually as great as it is where the city is sued." Thus an exoneration of the county must necessarily include its agent whose acts

are necessarily vindicated and upon whose acts the alleged liability of the county rests.

The judgment and order are affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied March 28, 1956, and appellant's petition for a hearing by the Supreme Court was denied April 25, 1956. Carter, J., was of the opinion that the petition should be granted.