Filed 10/25/24; Modified and Certified for Pub. 11/21/24 (order attached)

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| GRACE GONZALEZ, | |
| Plaintiff and Appellant, | E081220 |
| v. | (Super.Ct.No. CIVDS1938974) |
| INTERSTATE CLEANING CORPORATION et al., | OPINION |
| Defendants and Respondents. | |

APPEAL from the Superior Court of San Bernardino County. Wilfred J. Schneider, Jr., Judge. Affirmed.

Law Office of Jacob Emrani and Arturo T. Salinas for Plaintiff and Appellant.

Garrell Cohon Kennedy, Peter E. Garrell, John M. Kennedy and Samantha L. Weinstein for Defendants and Respondents.

Plaintiff Grace Gonzalez appeals from a summary judgment entered in favor of defendants Interstate Cleaning Corporation (ICC) and Ontario Mills Limited Partnership (OMLP). Gonzalez slipped and fell when she stepped on oranges that were on the floor

1

of the common walkway of the Ontario Mills Shopping Center, owned and operated by OMLP. ICC was the janitorial company hired to provide maintenance services, including monitoring the floors for spills and debris.

The trial court ruled there was no triable issue of material fact that, because defendants conducted active and frequent inspections of the floors, including where plaintiff fell, defendants had no actual or constructive knowledge of the spilled oranges and could not be held liable for the fall. Because we find no error, we affirm.

I.

FACTS AND PROCEDURAL BACKGROUND

A. *The Incident*.

Around 3:00 p.m. on December 31, 2007, plaintiff and her two minor granddaughters were walking in the common area of the Ontario Mills Shopping Center in front of a Converse store (between the Converse store and an art kiosk). Plaintiff slipped and fell on what appeared to be oranges. The granddaughters, who were walking two to three steps ahead, saw the oranges and were turning to warn plaintiff when she fell. Earlier in the day, the three had walked in this area of the shopping center but had not seen anything on the floor.

After she fell, plaintiff saw an orange substance she described as the separate, smashed slices of at least one peeled orange. She did not know if the orange had been smashed before or after she fell. Neither plaintiff nor her granddaughters saw anyone

2

spill or drop the oranges and they did not know where they had come from. Nor did they know how long the oranges had been there.

An employee from the Converse store helped plaintiff into the store so she could sit and wait for security to arrive. A worker from the art kiosk across from the Converse store cleaned up the oranges. Finally, a shopping center security guard escorted plaintiff in a wheelchair to a family car.

B. *Lawsuit and Defendants' Summary Judgment Motion.*

Two years later, plaintiff filed a form complaint against OMLP and ICC alleging a single cause of action for premises liability.

Defendants moved for summary judgment arguing they could not be held liable for plaintiff's injuries because they had no actual or constructive knowledge of the spilled oranges and could not have remedied the dangerous condition in time to avert the fall.

In support of their motion, defendants submitted evidence of their training and maintenance regimens. When the shopping center is open to the public, the duty and sole goal of janitorial employees of ICC (called "porters") is to walk predesignated routes and regularly and continuously inspect the common area floors for any liquid or debris. Other porters' duties are to empty trash bins and maintain the food court area.

Wayne Rodriguez, vice-president of operations for ICC, and the shopping center site manager, conducted a rigorous training program for porters to ensure they understood the importance of the inspections. The training began with 21 days of hands-on training on how to follow the designated porter route (path of travel); how to walk and

3

simultaneously examine and scan the floor for debris, substances, and/or other liquids; and how to clean any conditions they observed. Next, ICC conducted additional training and unannounced testing during the following 30, 60, and 90 days. During that time, Mr. Rodriguez and the site manager tested and examined the porters on how they performed the following tasks: following their designated routes; conducting inspections of the common area floors; blocking off any observable spills and setting up appropriate warnings; and cleaning and drying the floor before leaving the affected area. Finally, after 90 days, porters received regular and unannounced training and testing for the remainder of their employment.

Porters were trained to constantly look down at the floors from left to right and right to left while walking in a "serpentine pattern" so they could examine all of the common area floors. In each "beacon zone," the porters were trained to walk around seating and seller kiosks inside the common areas because those objects might block the porter's line of sight. For this reason, porters were trained not to push janitorial carts as the cart's bulk might interfere with their ability to properly observe floor conditions.

Finally, porters were trained to complete their predesignated routes in the shopping center approximately every 20 to 30 minutes. On the day of plaintiff's fall, there were 31 ICC porters on duty inspecting the shopping center floors. Ms. Villa, the porter assigned to the area where plaintiff fell on that day, had been employed by ICC since 2015. Mr. Rodriguez personally trained Ms. Villa and he regularly observed Ms. Villa's work during the two years preceding the incident. He never observed Ms. Villa

4

walk past any debris or spilled items without cleaning the flooring, and she had no disciplinary problems while employed by ICC.

As part of its inspection program, ICC installed an employee tracking system called the "Lighthouse" system to track porters as they conducted their walking inspections. This electronic sweep-sheet system was an improvement on handwritten sweep sheets because it was tamper-proof and recorded in real time. The first part of the system consists of the Lighthouse "beacons" that are domes attached to the ceiling throughout the shopping center common areas at various intervals along porter routes. Defendants introduced beacon maps showing the domes throughout the shopping center. The beacon zones inside the shopping center common area are rectangular and measure 150 feet by 33 feet. The zones overlap at the outer edges so ICC can constantly track porters. While conducting an inspection, a porter is always within range of a beacon dome. A porter can traverse and inspect an entire beacon zone in one minute and 30 seconds.

The second part of the Lighthouse system consists of company cell phones carried by the porters. An application installed on the cell phones communicates with the beacons through Bluetooth technology when a porter enters a beacon zone. The beacon collects data, including the porter's identity, the porter's exact location while on their route, and the inspection time while the porter is in the "beacon zone" down to a hundredth of a second. The data is then transmitted in real time to a server maintained by the third party vendor, Lighthouse, which itself is the third part of the system. The data is

5

permanently stored on the server as it is received in real time, and the server is tamper proof.

The fourth part of the system is ICC's computers, from which Lighthouse reports are generated. Defendants introduced a Lighthouse map and report to establish that beacon zone 3 was constantly monitored on December 31, 2017. More specifically, the reports demonstrate Ms. Villa's inspections on that day. Ms. Villa inspected beacon zone 3 (the area where plaintiff fell in front of the Converse store) eight minutes before 3:00 p.m. The report showed Ms. Villa entered the area where zones 4 and 3 overlap and into zone 3 at 2:50:29 p.m. Ms. Villa was inside zone 3 for a total of one minute and 29 seconds, exiting the zone at 2:51:58 p.m.

Plaintiff opposed the motion contending there were triable issues of material fact whether defendants actively and thoroughly inspected the common area where she fell and, therefore, whether defendants had constructive knowledge of the spilled oranges and the opportunity to clean the spill before plaintiff fell. Inter alia, she argued defendants had not introduced the testimony of Ms. Villa to prove she had thoroughly inspected the common area floor and defendants cited no authority for the proposition that a store owner may prove active inspection with evidence of an automated employee tracking system.[1] In support of her opposition, plaintiff introduced the declaration of Brad Avrit, a licensed civil engineer, who opined the floor where plaintiff fell had an unsafe slip

---

[1] Previously, the trial court had granted plaintiff a continuance of the summary judgment hearing to depose Ms. Villa. Plaintiff was unable to depose Ms. Villa, but during the continued hearing plaintiff essentially conceded she would no longer seek to depose her.

6

resistance and that defendants had constructive knowledge of the dangerous condition before the fall. With minor exceptions, such as objections to arguments and opinions, plaintiff did not dispute most of defendants' statements of undisputed material facts relating to the accident and to defendant's training and inspection of the common areas.

In reply, defendants objected to almost the entirety of the declaration of Brad Avrit.[2]

At the hearing, defendants argued they were not required to introduce testimony from Ms. Villa or video evidence, and the undisputed evidence they did introduce demonstrated they actively inspected the common area floors no more than eight to nine minutes before plaintiff fell. Therefore, defendants argued plaintiff could not establish constructive knowledge of the spilled oranges and summary judgment should be granted.

After taking the matter under submission, the trial court sustained defendants' objections to all but one paragraph of Avrit's declaration.[3] The court ruled the undisputed evidence demonstrated defendants had no actual knowledge of the oranges before plaintiff fell, and evidence of Ms. Villa's training and ICC's inspection practices established the area where plaintiff fell had been inspected between eight to nine minutes

---

[2] Defendants also objected to the entirety of the declaration of Eris Barillas, an aperture forensic expert who conducted the slip resistance testing on which Avrit relied. However, plaintiff apparently never filed Barillas's declaration with the trial court. For that reason, the trial court made no ruling on the objection.

[3] Plaintiff does not challenge this evidentiary ruling on appeal, so we may not consider the excluded evidence. (*Wall Street Network, Ltd. v. New York Times Co.* (2008) 164 Cal.App.4th 1171, 1181 [when an appellant fails to challenge evidentiary rulings barring evidence submitted in support or opposition of summary judgment, "we exclude this evidence from our review of the summary judgment motion"].)

before the incident.  The evidence of "[a] reasonable inspection within a short period" before the fall showed defendant lacked "constructive knowledge of the dangerous condition . . . with time to cure."  Therefore, the trial court granted summary judgment and subsequently entered judgment for defendants.

Plaintiff timely appealed.

## II.

## DISCUSSION

A.  *Summary Judgment Principles and Standard of Review.*

Code of Civil Procedure section 437c, subdivision (c), provides that summary judgment is to be granted "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  A defendant "moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*).)  A defendant may meet this burden either by showing one or more elements of a cause of action cannot be established or by showing there is a complete defense.  (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, at p. 850.)

If the defendant's prima facie case is met, the burden shifts to the plaintiff to show the existence of a triable issue of material fact with respect to that cause of action or defense.  (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, *supra*, 25 Cal.4th at p. 850.) "[T]o meet that burden, the plaintiff '. . . shall set forth the specific facts showing that a

triable issue of material fact exists as to that cause of action . . . .'" (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476-477.) Ultimately, the moving party "bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." (*Aguilar*, at p. 850, fn. omitted.)

"'"Because this case comes before us after the trial court granted a motion for summary judgment, we take the facts from the record that was before the trial court when it ruled on that motion. [Citation.] '"We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained."' [Citation.] We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party."'" (*Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347.)

"Furthermore, our review is governed by a fundamental principle of appellate procedure, namely, that '"[a] judgment or order of the lower court is presumed correct,"' and thus, '"error must be affirmatively shown."' [Citation.] Under this principle, plaintiff bears the burden of establishing error on appeal, even though defendants had the burden of proving their right to summary judgment before the trial court." (*Arnold v. Dignity Health* (2020) 53 Cal.App.5th 412, 423.)

B. *The Trial Court Properly Granted Summary Judgment for Defendants.*

"The elements of a negligence claim and a premises liability claim are the same: a legal duty of care, breach of that duty, and proximate cause resulting in injury.

[Citations.]  Premises liability "'is grounded in the possession of the premises and the attendant right to control and manage the premises'"; accordingly, "'mere possession with its attendant right to control conditions on the premises is a sufficient basis for the imposition of an affirmative duty to act.'"  [Citation.]  But the duty arising from possession and control of property is adherence to the same standard of care that applies in negligence cases."  (*Kesner v. Superior Court* (2016) 1 Cal.5th 1132, 1158.)

"A store owner exercises ordinary care by making reasonable inspections of the portions of the premises open to customers, and the care required is commensurate with the risks involved."  (*Ortega v. Kmart Corp.* (2001) 26 Cal.4th 1200, 1205 (*Ortega*).)  "'[T]he owner must use the care required of a reasonably prudent [person] acting under the same circumstances.'"  (*Ibid*.)  "This includes a duty to keep the floors safe for patrons' use."  (*Peralta v. The Vons Companies, Inc.* (2018) 24 Cal.App.5th 1030, 1035 (*Peralta*), citing *Tuttle v. Crawford* (1936) 8 Cal.2d 126, 130.)  "Because the owner is not the insurer of the visitor's personal safety [citation], the owner's actual or constructive knowledge of the dangerous condition is a key to establishing its liability.  Although the owner's lack of knowledge is not a defense, '[t]o impose liability for injuries suffered by an invitee due to [a] defective condition of the premises, the owner or occupier "must have either actual or constructive knowledge of the dangerous condition or have been able by the exercise of ordinary care to discover the condition, which if known to him, he should realize as involving an unreasonable risk to invitees on his premises. . . ."'"  (*Ortega*, at p. 1206.)

In *Ortega*, the Supreme Court specifically addressed "under what circumstances, if any, a store owner may be liable for injuries to a business invitee from a dangerous condition on its premises where the evidence fails to show how long the dangerous condition existed prior to the injury." (*Ortega*, *supra*, 26 Cal.4th at p. 1203.) "[W]here the plaintiff relies on the failure to correct a dangerous condition to prove the owner's negligence, the plaintiff has the burden of showing that the owner had notice of the defect in sufficient time to correct it." (*Id*. at p. 1206.) "The plaintiff need not show actual knowledge where evidence suggests that the dangerous condition was present for a sufficient period of time to charge the owner with constructive knowledge of its existence. Knowledge may be shown by circumstantial evidence 'which is nothing more than one or more inferences which may be said to arise reasonably from a series of proven facts.' [Citation.] Whether a dangerous condition has existed long enough for a reasonably prudent person to have discovered it is a question of fact for the jury, and the cases do not impose exact time limitations. Each accident must be viewed in light of its own unique circumstances. [Citation.] The owner must inspect the premises or take other proper action to ascertain their condition, and if, by the exercise of reasonable care, the owner would have discovered the condition, he is liable for failing to correct it." (*Id*. at pp. 1206-1207.)

"[A] plaintiff may prove a dangerous condition existed for an unreasonable time with circumstantial evidence, and . . . 'evidence that an inspection had not been made within a particular period of time prior to an accident may warrant an inference that the

11

defective condition existed long enough so that a person exercising reasonable care would have discovered it.'" (*Ortega*, *supra*, 26 Cal.4th at p. 1210.) "[A]llowing the inference does not change the rule that if a store owner has taken care in the discharge of its duty, by inspecting its premises in a reasonable manner, then no breach will be found even if a plaintiff does suffer injury." (*Id.* at p. 1211.)

In *Ortega* itself, there was evidence the store's premises had not been inspected for "at least 15 to 30 minutes (and possibly up to two hours)" before the plaintiff slipped in spilled milk and fell. (*Ortega*, *supra*, 26 Cal.4th at p. 1210.) The Supreme Court ruled that on that evidence, a jury would have to decide whether, under the circumstances, that period was unreasonably long and gave rise to an inference the dangerous condition existed long enough for the owner to have discovered and remedied it in the exercise of reasonable care. (*Id.* at p. 1213.)

Plaintiff contends defendants are not entitled to summary judgment because they did not introduce Ms. Villa's testimony (at deposition or in a declaration) about the adequacy of her inspection of the floors before the fall or other competent evidence such as video showing the inspection. She argues, essentially, there is no authority for a store owner to prove it actively inspected the area in a reasonable manner with a declaration of a knowledgeable employee and evidence of an electronic employee monitoring system.

But plaintiff cites no case that has held the store owner must introduce the testimony of the employee who conducted the inspection, and we have found none. The store owner may prove it exercised reasonable care and inspected the floor within a brief

12

period before the accident with a declaration from a knowledgeable person describing the store's regular maintenance practices and the record of actual inspections conducted around the time of the plaintiff's injury. (See, e.g., *Peralta*, *supra*, 24 Cal.App.5th at pp. 1033 [defendant introduced declaration from store manager describing the store's "formal inspections" and employee logs showing an employee inspected the floor less than eight minutes before plaintiff fell].) Mr. Rodriguez's declaration was competent testimony about ICC's porter training program, its maintenance and employee monitoring regime, and Ms. Villa's record as a porter. Moreover, he properly laid the foundation for introducing reports showing Ms. Villa inspected the affected area around the time of plaintiff's fall. The trial court properly considered that evidence.

To contradict defendants' assertion that Ms. Villa walked the common area in front of the Converse store in a "serpentine" fashion, plaintiff points to the fact the exhibit of the beacon map contained a straight line showing Ms. Villa's general path of inspection travel from beacon to beacon in the area where plaintiff fell. However, defendants contend the line was merely demonstrative to show the starting and end point of Ms. Villa's inspection just before 3:00 p.m. and did not represent her exact path of travel. The trial court properly rejected plaintiff's argument, noting, plaintiff "did not dispute facts associated with the training [Ms. Villa] received associated with inspecting the mall," which included being trained to walk the floors in a "serpentine" fashion and around obstacles while scanning the floor from side to side.

13

We conclude the trial court properly ruled the undisputed evidence showed defendants actively inspected the floor, and the eight- to nine-minute interval between the last inspection and plaintiff's fall was insufficient to demonstrate constructive knowledge.

To repeat, there are no "exact time limitations" when determining "[w]hether a dangerous condition has existed long enough for a reasonably prudent person to have discovered it . . . ." (*Ortega*, *supra*, 26 Cal.4th at p. 1207.) For instance, in *Girvetz v. Boys' Market, Inc.* (1949) 91 Cal.App.2d 827 (*Girvetz*) a customer slipped and fell on a banana peel that had been lying on the floor of a store's grocery department for a minute and a half before the incident. (*Id*. at p. 828.) The store's manager testified "there was a janitor on duty at all times who was instructed to sweep the floors; that there was a 'box boy' who was instructed to keep the place swept between the check stands and the candy department; that there was at all times a porter on duty whose primary duty was to sweep the floor, and also a boy designated to sweep whenever he saw the necessity therefor; [and] that employees in each department were required to keep their immediate vicinity 'as clean as possible.'" (*Id*. at pp. 828-829.)

The appellate court held the banana peel had not been on the floor sufficiently long to impose liability on the store's owner. "Obviously, the exact time that a dangerous condition must exist in order to charge the proprietor cannot be stated as a matter of law. It can only be held that, in the circumstances of the case now before the court, one and one-half minutes is too short a period. True, there were many employees in the

14

immediate vicinity of where the plaintiff fell.  If their duty required that they perceive the presence of the object on the floor within a minute and a half after it fell there, then their duty was not that of 'ordinary,' but of 'utmost' care.  The conclusion is inescapable that the evidence cannot, as a matter of law, be held sufficient without, in effect, applying the doctrine of res ipsa loquitur and casting upon the market proprietor a burden which, in the present state of the law, he is not required to assume." (*Girvetz*, *supra*, 91 Cal.App.2d at p. 832.)

In contrast, the plaintiff in *Louie v. Hagstrom's Food Stores, Inc.* (1947) 81 Cal.App.2d 601 fell when she stepped in a puddle of syrup that had oozed out of a broken jar inside a paper bag that had fallen to the concrete floor.  (*Id*. at pp. 603-605.)  The evidence showed no employee had inspected the area of the store where the plaintiff fell for between 15 to 25 minutes before the incident, but the plaintiff was unable to introduce "direct evidence of the exact time the bottle was broken" and, consequently, of how long the spill existed before she fell.  (*Id*. at pp. 605-606.)  Nevertheless, the appellate court held circumstantial evidence demonstrated the syrup had been on the ground for a substantial period before the customer fell, and that the defendant was not entitled to a judgment as a matter of law.  "There is evidence that the puddle of syrup had reached appreciable proportions before the accident.  There is evidence of defendant's own witness that this syrup was quite thick, possessed adhesive qualities, that the day was cold, and that on such a day the syrup would flow quite slowly.  It is a reasonable inference that for this heavy thick fluid to have seeped through the paper bag and to have

15

formed a puddle of appreciable proportions would take a substantial period of time. When this evidence is considered, keeping in mind that this was a very busy grocery and vegetable store, and keeping in mind the obvious dangers that exist in such establishments, we think there was ample evidence . . . to sustain the jury's implied finding that this condition existed long enough so that defendant should, in the exercise of ordinary care, have discovered and remedied it." (*Id.* at pp. 608-609.)

In *Alacan v. Target Corp.* (C.D. Cal. June 26, 2015, No. CV 14-04564-AB (VBKx)) 2015 U.S. Dist. LEXIS 178484, the district court granted summary judgment after finding there was no triable issue the store owner had no constructive knowledge of the dangerous condition. "With respect to constructive notice, the only evidence on the issue is the undisputed evidence that [an employee] inspected the area where Alacan fell 5 to 7 minutes before her fall. Assuming a jury were to find that [the employee] inspected the area where Alacan fell just 7 minutes before the fall, the Court finds as a matter of law that Alacan's negligence premises liability action fails because a store owner's inspection within 7 minutes of the fall does not constitute a breach of the duty of care."[4] (*Id.* at *9-10.)

---

**4** We decline to follow *Alacan*, *supra*, 2015 U.S. Dist. LEXIS 178484, at *10 to the extent it suggested "nothing less than thirty minutes between the last inspection and a plaintiff's fall has been held to raise a genuine dispute of material fact or sufficient to uphold a plaintiff's verdict." (See, e.g., *Ruiz v. Walmart Inc.* (C.D. Cal. Jan. 21, 2021, No. CV 20-01129 (RAOx)) 2021 U.S. Dist. LEXIS 49761, at * 17 [declining to find as matter of law that defendant "could not have been on constructive notice if it had conducted an inspection of the area 23 minutes prior to the fall"]; *Contreras v. Wal-Mart Stores, Inc.* (C.D. Cal. May 8, 2015, No. SACV 14-0973-DOC (ANx)) 2015 U.S. Dist. LEXIS 182114, at * 20 [denying summary judgment where inspection occurred 13

*[footnote continued on next page]*

Here, the undisputed evidence that was credited by the trial court amply demonstrated defendants had adopted employee training and maintenance programs reasonably calculated to ensure regular and active inspections of the floors in the common areas of the shopping center. The undisputed evidence, and the reasonable inferences to be drawn from it, also demonstrated Ms. Villa inspected the area where plaintiff fell between eight to nine minutes before the fall. We therefore agree with the trial court that, under those circumstances, defendants lacked constructive knowledge of the spilled oranges in time to prevent plaintiff's fall, and they cannot be held liable in negligence for her injuries.

Last, as she did in the trial court, plaintiff argues defendants failed to retain video footage that might have shown they breached their duty of care, and they should not be rewarded for this conduct. Defendants assert the failure to preserve the video resulted from plaintiff mailing her claim letter and evidence retention request to a nonexistent claims department at the shopping center's address. In any event, plaintiff did not request the trial court apply the adverse evidentiary presumption under Evidence Code section 413 for willful suppression of evidence, or move the trial court to issue discovery sanctions under Code of Civil Procedure section 2023.030 for the spoliation of evidence. (See generally *Victor Valley Union High School Dist. v. Superior Court* (2023) 91

---

minutes before accident]; *Sorensen v. Target Corp.* (N.D. Cal. Dec. 10, 2013, No. 12-cv-04025-JCS) 2013 U.S. Dist. LEXIS 173221 at * 24 ["Whether twenty-one minutes is a reasonable amount of time for Target to not conduct a reasonable inspection is a question for a jury"].)

Cal.App.5th 1121, 1139-1140, 1151.)  Therefore, neither the trial court nor this court

must penalize defendants for not preserving the video.

III.

DISPOSITION

The summary judgment is affirmed.  Defendants shall recover their costs on

appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)


McKINSTER_____
                                                                    Acting P. J.

We concur:


CODRINGTON_____
                          J.


MENETREZ_____
                          J.

Filed 11/21/24

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| GRACE GONZALEZ, | |
| Plaintiff and Appellant, | E081220 |
| v. | (Super.Ct.No. CIVDS1938974) |
| INTERSTATE CLEANING CORPORATION et al., | ORDER MODIFYING OPINION AND CERTIFYING OPINION FOR PUBLICATION |
| Defendants and Respondents. | [NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on October 25, 2024, be modified as follows:

On page 2, first sentence under subheading A. *The incident*, the date of December 31, 2007, is changed to December 31, 2017.

There is no change in the judgment.

The opinion in the above-entitled matter was not certified for publication in the Official Reports. A request having been made to this court pursuant to California Rules of Court, rule 8.1120(a), for publication of a nonpublished opinion heretofore filed in the above matter on October 25, 2024, and it appearing that the opinion meets the standards for publication as specified in California Rules of Court, rule 8.1105(c),

1

IT IS ORDERED that said opinion be certified for publication pursuant to California Rules of Court, rule 8.1105(b).  The opinion filed in this matter is certified for publication.

CERTIFIED FOR PUBLICATION


McKINSTER
Acting P. J.

We concur:


CODRINGTON
J.


MENETREZ
J.

2